LAKE BLUFF HEATING AND AIR CONDITIONING SUPPLY, INC., Plaintiff, *v.* HARRIS TRUST AND SAVINGS BANK, Trustee, Defendant and Cross-Plaintiff Appellant—(Glenview Guarantee Savings & Loan Association, Defendant and Cross-Defendant-Appellee; Charles Diemer *et al.*, Defendants).

Second District, No. 82—782

▬▬▬▬

Opinion filed August 19, 1983.

Gary A. Weintraub and David A. Epstein, both of Jann, Carroll, Sain & Dolin, Ltd., of Chicago, for appellant.

Eric A. Oesterle, Kirk R. Ruthenberg, and Steven M. Levy, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE HOPF delivered the opinion of the court:

This action originated as a mechanic's lien foreclosure proceeding brought by Lake Bluff Heating and Air Conditioning Supply, Inc. (Lake Bluff), to recover for work performed by them in March 1981 on certain residential property located in Libertyville, Illinois. At that

time, the subject property was owned by Glenview Guaranty Savings & Loan Association (Glenview), which had acquired the property by foreclosure. In May 1981, Glenview sold the property to Harris Trust and Savings Bank (Harris), as trustee of a trust whose beneficiary was Barry M. Dolin. Both Harris and Glenview were defendants in the lien foreclosure action. Harris filed a cross-claim against Glenview in two counts. Count I alleged that Glenview breached certain express warranties in its contract of sale with Harris, and count II sought indemnification from Glenview for any amounts which Harris might be required to pay Lake Bluff in the lien foreclosure action. Harris moved for summary judgment on its indemnification claim and the motion was granted by the trial court. Subsequently, Glenview paid Lake Bluff the amount due to it, and the lien foreclosure proceeding was dismissed against both Glenview and Harris.

The cause proceeded to trial on count I of Harris' cross-claim, and after hearing the evidence and arguments of counsel the trial court found in favor of Glenview. Harris appeals, contending that: (1) the trial court's ruling on the indemnification count of the cross-claim established the law of the case and was inconsistent with its subsequent ruling against Harris; (2) the trial court erroneously found that Glenview did not breach any express warranties; and that (3) Glenview breached an implied warranty of habitability when it refused to complete necessary repairs to the premises.

Albert Dolin, an attorney and the father of Barry Dolin, the trust beneficiary, negotiated on behalf of Harris and Barry Dolin for the purchase of the property in question. Charles Skopp, senior vice-president in charge of lending at Glenview, represented Glenview in the negotiations. In November or December 1980, Dolin first contacted Skopp about purchasing the property for his son. At their initial meeting, Dolin noted the deplorable condition of the house, which had been severely damaged due to freezing of the plumbing and heating systems. Both systems were inoperable, interior piping had burst, and there was extensive water damage throughout. In December 1980, Glenview engaged the services of Brewer's Plumbing and Heating Company (Brewer) to repair the damage caused by the winter freeze, and Brewer commenced work on the property until sometime in March 1981. The repairs were never completed by Brewer. Meanwhile, negotiations between Harris and Glenview continued, with both Dolin and Skopp periodically inspecting the property from January through April 1981 to observe the progress of the repairs being done by Brewer. Both men were therefore aware of the lack of progress in these repairs in March and April. Nevertheless on April 23, 1981, the

parties reached an agreement for the purchase of the property at a price of $195,000, subject to Harris' being able to obtain a $110,000 mortgage "with interest not to exceed 12% a year." A rider attached to the contract provided that Glenview "warrants that the damage caused by the freezing of the plumbing and heating facilities in the premises will be properly repaired or replaced prior to closing \*\*\*." The closing date was specified as May 4, 1981.

After signing the contract of sale, Skopp and Dolin visited the building and observed that the work still had not been completed. Dolin then indicated to Skopp the importance of finishing the repairs, and Skopp subsequently contacted another contractor, Werner and Wilke, Inc. (Werner), who estimated it would cost $12,550 to complete the job Brewer did not finish. That estimate was given on May 4, 1981, the original closing date, and was shown to Dolin several days later.

Shortly before the closing, which was finally held on May 16, 1981, the parties agreed that the closing of the sale would be held prior to the completion of the work and repairs referred to in the rider of the contract. In that regard, Dolin drafted a letter to be signed by Glenview, dated May 14, 1981, which stated:

"Harris Trust and Savings Bank
   Trust No. 41133, its beneficiaries,
   and Barry M. Dolin

Gentlemen:

For and in consideration of the sale and purchase of the residential property on St. Mary's Road in Green Oaks, Ill., we represent and warrant that we have engaged and fully paid Brewer Plumbing and Heating Co. in Libertyville, Ill. to replace the heating system, including radiators, in the said house and make such system fully operable, and further, to replace all broken water pipes in the house which leak, including replacement of insulation, repairs to walls and floors and removal of all debris.

The aforesaid work was to have been completed prior to our closing but to facilitate an early closing this representation is made.

We do also agree and hereby assign to you all of our rights, privileges and demands which we may now have or subsequently acquire against the said Brewer Plumbing and Heating

Company and we assign to you the full right and authority to proceed against Brewer Plumbing and Heating Company in any matter you may deem appropriate in our place and stead.

Very truly yours,

Glenview Guaranty Savings and Loan Association

By:_____."

This letter was signed by Skopp at the closing. Beneath Skopp's signature the following provision was added by Glenview:

"Seller agrees to purchase property in an 'as is condition'

Accepted

_____

Beneficiary of Harris Trust and Savings
Bank, Trust No. 41133."

This was signed by Barry Dolin, the trust beneficiary. The parties agree that the word "seller" in the added sentence was a mistake and should have been "purchaser." At the closing, Glenview also tendered and signed several other documents in which Glenview warranted that "all contracts for the furnishing of labor or materials to the subject premises *** have been completed and fully paid," and that "no labor or material has been furnished for premises within the last four months, that is not fully paid for." It is undisputed that the plumbing and heating repairs had not yet been completed at the time of closing. Glenview originally gave Harris a mortgage at 12% interest per year; however this interest rate was subsequently lowered to 10% prior to closing. The change from 12% to 10% is reflected on the face of the loan agreement.

Following the May 16 contract, Harris discovered that Brewer had gone out of business. Dolin contacted Glenview and demanded that it complete the repairs on the premises. When Glenview refused, Dolin hired Louis Semke, who had previously been employed by Brewer, to complete the repairs to the premises. According to Semke, the payments previously paid by Glenview to Brewer were not sufficient to fully complete the Brewer contract; an additional $30,000 was required.

At trial Harris contended that its agreement to purchase the property in an "as is" condition did not apply to the plumbing and heating systems. Glenview maintained that the "as is" provision was added to reflect Harris' agreement to assume responsibility for all re-

pairs to the premises, including the plumbing and heating systems, in exchange for the reduction in the mortgage interest rate. The court ruled that the letter agreement was ambiguous and that parol evidence would be admissible in ascertaining the intent of the parties. No transcript of this ruling appears in the record.

Skopp testified that on or about May 10, 1981, he had a conversation with Dolin wherein they discussed the difficulty Glenview was having in getting Brewer to complete the contract. At that time, Skopp showed Dolin the proposal he had received from Werner and Wilke estimating the cost of completing the Brewer contract. According to Skopp, Dolin stated he would assume responsibility for the Brewer contract and the repairs to be done if Glenview would agree to a 10% mortgage on the property rather than the 12%, and also assign to Harris any rights it had against Brewer. The 2% reduction was approximately equal to the amount estimated in the Werner proposal to complete the Brewer contract. Glenview agreed to this arrangement. The change from 12% to 10% interest was handwritten on the face of the loan agreement.

Dolin admitted to having the conversation with Skopp regarding the difficulties Glenview was having in getting Brewer to complete the job, but he denied discussing the likelihood that Brewer would not complete the repairs. About the Werner proposal to complete repairs, Dolin stated that he "didn't see where that was of any interest to me at all." He stated he informed Skopp that he was not interested in this information, although he could not recall when that conversation took place. According to Dolin, the 2% reduction in mortgage interest rate was given by Glenview in consideration of Harris' agreement to close the deal prior to completion of the plumbing and heating repairs and to waive the right to inspection prior to closing. Dolin stated he did not think it was necessary to state in the letter that Glenview would itself pursue the repairs after closing, but that he believed this interpretation "would logically follow." Dolin testified that the assignment in the letter was "not an absolute assignment," but rather "a privilege to represent the bank in dealing with Mr. Brewer." He testified that at the closing he made it clear to Skopp that he would be willing to accept the property in an "as is" condition, except for the completion of the plumbing and heating systems. According to Dolin, Skopp indicated at that time he would take care of it. Skopp denied making this statement.

After hearing the evidence and arguments of counsel, the trial court found that Glenview did not breach any of the express warranties which it had given to Harris.

■ Harris first claims that the trial court's initial ruling on the indemnification count of its cross-claim established the law of the case and was inherently inconsistent with the court's later ruling that Glenview did not breach any warranty to repair. In its order on the indemnification count, the court found that Harris was entitled to reimbursement from Glenview for any amounts it might be required to pay Lake Bluff. The order specifically stated that "the express warranties contained in the documents is [sic] not negated by the 'as is' provision ***." In its argument, Harris assumes that the express warranties to which the order refers are the same warranties to repair that are the subject of the present appeal. Glenview maintains, however, that the initial ruling of the court addressed only the effect of the "as is" provision on the warranties of title given to Harris at the closing. We agree.

Harris' cross-motion for summary judgment on the indemnification count alleged that Glenview warranted that all labor and materials furnished to the property had been fully paid for. The motion also alleged that Lake Bluff's lien claim arose prior to Harris' purchase of the property and that any failure by Glenview to pay Lake Bluff for this work was in breach of the terms of the real estate agreement which "warranted and represented that title to the property would be free and clear of any liens or encumbrances." In its memorandum in support of the motion, Harris discussed the effect of the "as is" clause on express warranties of title, and concluded that "pursuant to the express warranty of title, the seller is responsible for and must indemnify Harris for such claim." Attached to the memorandum were the "Affidavit of Title Covenant and Warranty," and an "ALTA Extended Coverage Owners and Loan Policy Statement," which both highlighted the "fully paid" provisions. The order on the indemnification issue referred to certain documents, and the only documents presented to the court in support of Harris' motion were those containing the express warranties of title. Thus, it is clear that these were the documents to which the order referred. There is no evidence in the record indicating that the court in ruling on the indemnity issue considered the effect of the "as is" clause on the warranties to repair, which is the question now before us. Thus, it is evident that the trial court's ruling on the indemnification issue did not establish the "law of the case." The "law of the case" doctrine binds a court to a view of law announced in its prior opinion in a case between the same parties. (*Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 402, 442 N.E.2d 338.) However, the doctrine is not applicable where either different parties or issues are involved. (*Miscevich;*

*Quern v. Jordan* (1979), 440 U.S. 332, 59 L. Ed. 2d 358, 99 S. Ct. 1139.) Since the court's indemnification ruling in the instant case considered a different issue than that considered in the court's subsequent ruling (*i.e.*, Glenview's obligation to convey clear title as opposed to its obligation to repair), the "law of the case" doctrine is inapplicable here. *Miscevich*.

Harris next claims that the following express warranties were given to it and breached by Glenview: (1) that Glenview contracted and fully paid Brewer to replace and repair the heating and plumbing systems in the building (warranty found in the May 14, 1981, letter); (2) that all existing contracts were completed and fully paid (found in the affidavit of title covenant and warranty and ALTA Statement); and (3) that Glenview would complete the repairs itself, either prior to or after closing (in the April 23, 1981, contract). Harris contends initially that it is entitled to recover as a matter of law on the first two warranties alone, and that this court need not reach the question whether the April 23 warranty to repair survived the closing. Alternatively, Harris maintains that the warranty to repair did survive the closing date and that the "as is" provision in the May 14 letter altered merely the time element of the original warranty to repair so that Glenview was no longer required to complete the repairs prior to closing.

■ Before reaching the merits of Harris' argument, we turn first to Harris' suggestion in its brief that parol evidence was improperly used to ascertain the intent of the parties. The record is absent as to any objection by Harris at trial to the use of parol evidence. Accordingly, it must be presumed, in the absence of any contrary indication, that no objection was made. (*Venturini v. Affatato* (1980), 84 Ill. App. 3d 547, 552, 405 N.E.2d 1093.) In addition, this contention was raised by Harris for the first time in its reply brief and is, therefore, waived. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.) In any event, it is evident that parol evidence was properly admissible on the question whether Glenview's April 23 warranty to repair survived the "as is" provision in the May 14 letter, since the language in the letter is "reasonably susceptible to more than one meaning." *In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 108, 438 N.E.2d 957.

■ On the merits of Harris' argument, we find no error in the trial court's finding that Glenview fully paid Brewer to complete the repairs, as warranted in the May 14 letter. At trial, Skopp testified that under Glenview's contract with Brewer, the total cost of repair was $32,720, which was paid in full. Documents supporting these payments were introduced at trial. According to Skopp, Charles Diemer,

owner of Brewer, signed in Skopp's presence the check stub of the last payment made, and wrote the words "final payment" on it. This check stub was offered into evidence but was refused because it was not produced during discovery. The court nevertheless did allow Skopp's testimony regarding the circumstances surrounding this alleged final payment. According to Skopp, the stub was in lieu of a final waiver of lien form, which Glenview requested but never received. Although Harris presented the testimony of Louis Semke that the $30,000 figure would not have covered the repairs to be done, Harris was bound to accept, as assignee, the contract as it was originally negotiated between Brewer and Glenview. (*Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 397, 418 N.E.2d 988.) There is no evidence in the record indicating that the actual contract was anything other than what Skopp indicated in his testimony.

It is also evident that Glenview's warranty that all existing contracts were completed and fully paid, did not apply to the Brewer contract at issue here. The letter of May 14 specifically acknowledged that the Brewer contract had not yet been completed at the time of closing. Thus, the warranty regarding existing contracts was waived by Harris as it applied to Brewer.

■ We next consider the critical issue in this case: whether the "as is" provision in the May 14 letter had the effect of negating or disclaiming the original warranty to repair which was contained in the April 23 agreement. The trial court found that the original warranty was disclaimed, and that construction should not be disturbed unless contrary to the manifest weight of the evidence. *Burgener v. Gain* (1981), 101 Ill. App. 3d 699, 428 N.E.2d 722.

The term "as is" is generally understood to mean that the buyer is purchasing goods in its present condition with whatever faults it may possess. (*Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 356, 292 N.E.2d 168; *Garofalo Co. v. St. Mary's Packing Co.* (1950), 339 Ill. App. 412, 417, 90 N.E.2d 292.) The term is similar to terms such as "with all faults" or "in its present condition," and implies that the seller is relieved of any further obligation to reimburse for loss or damage because of the condition of the goods. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 807, 443 N.E.2d 36; *Overland; First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 236, 205 N.E.2d 780; *Garofalo.*) Thus, according to the plain meaning of the "as is" clause in the instant case, it is at least some evidence that the previous express warranty to repair was disclaimed. *Schoeneweis;* see also Ill. Rev. Stat. 1981, ch. 26, par. 2—316(3)(a), in-

terpreting this term similarly in a contract for the sale of goods.

The Uniform Commercial Code, while not directly applicable, offers some guidance for an analysis of this issue. Under the Code, a written disclaimer of an express warranty contained elsewhere in the same contract is generally inoperable. (Ill. Rev. Stat. 1981, ch. 26, par. 2—316(1).) This general rule is subject however to parol evidence which would indicate that it is reasonable to construe the disclaimer as negating the express warranty. (Ill. Rev. Stat. 1981, ch. 26, pars. 2—316(1), 2—202.) The purpose of these provisions is to "protect the buyer from an *unexpected* disclaimer of warranty" by denying effect to such language when it is inconsistent with the language of the express warranty. (Emphasis added.) (Ill. Ann. Stat., ch. 26, par. 2—316(1), Illinois Code Comment, subsection (1), at 251-52 (Smith-Hurd 1963); see *Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 58, 349 N.E.2d 627.) We believe the same policy is applicable to contracts falling outside the Uniform Commercial Code. Thus, the question here is whether a disclaimer of Glenview's previous express warranty to repair was unexpected and unbargained for. The record here supports the trial court's finding that it was not.

■ It is clear that both parties knew of the condition of the property at the time of closing, and had inspected it on numerous occasions. Skopp testified the disclaimer relieving Glenview of any further obligation to repair was specifically bargained for after the April 23 agreement and before the May 14 letter was signed. He stated that in consideration of the disclaimer, Glenview agreed to reduce the interest rate on the mortgage by 2%, resulting in a savings to Harris of approximately $15,000. According to defendant's exhibits, this amount approximated the cost of completion of the repairs by another contractor. The loan agreement corroborated Skopp's testimony in this regard, since on its face the original 12% interest rate had been reduced to 10%. Although Dolin testified the 2% interest rate reduction was given to him in exchange for Harris' agreement to close early, this was a credibility question for the trial court to resolve. (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122, 426 N.E.2d 604.) The record also indicates that Harris was aware of the problems Glenview was having with Brewer. Both Dolin and Skopp had contacted or attempted to contact Brewer regarding completion of the repairs. Skopp testified he fully advised Dolin of the problems, and this testimony was corroborated by Dolin's own testimony that the problems were discussed. Finally, Dolin, an attorney, drafted the May 14 letter and could have expressly provided that Glenview would itself

complete the repairs to the building if Brewer failed to do so. Instead, the letter merely stated that Glenview "represent[s] and warrant[s] that we have engaged and fully paid Brewer \*\*\* to replace the heating system \*\*\*." A contract is to be strictly construed against its drafter. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.) We therefore conclude that Glenview's only remaining obligation to Harris was that contained in the letter, and that the "as is" provision was a bargained-for disclaimer of the previous warranty to repair which was knowingly accepted by Harris.

Harris relies upon several cases as support for the proposition that an "as is" term cannot negate an express written warranty, although it might exclude certain implied warranties. (See *Imperial Stamp & Engraving Co. v. Bailey* (1980), 82 Ill. App. 3d 835, 403 N.E.2d 294; *First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 205 N.E.2d 780; *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1965), 68 Ill. App. 2d 297, 216 N.E.2d 282.) We have reviewed these cases and find them inapposite to the case at bar. Each of these cases dealt only with an alleged disclaimer of an *implied* warranty which was not otherwise discussed and bargained for by the parties. This is clearly not the situation here.

■ Finally, Harris claims Glenview breached an implied warranty of habitability when it refused to complete the necessary repairs to the premises after the closing. This contention was not raised in the trial court, and is therefore waived on appeal. (*Wiersema v. Workman Plumbing, Heating & Cooling, Inc.* (1980), 87 Ill. App. 3d 535, 536, 409 N.E.2d 159.) However, even were we to consider the issue, it is without merit. The extension of the warranty of habitability to the sale of an older home by a nonbuilder vendor was specifically rejected in *Sweetwood v. Mahoney* (1981), 93 Ill. App. 3d 788, 791, 417 N.E.2d 874. We adopt the reasoning of that case and find no warranty of habitability in the case at bar.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.