AUBREE A. PELC, Plaintiff-Appellee, v. MARK SIMMONS, Defendant-Appellant.

Fifth District   No. 5—92—0777

Opinion filed September 10, 1993.

Thomas Benedick, of O'Fallon, for appellant.

Harry J. Sterling, of Harry J. Sterling, P.C., of Fairview Heights, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The defendant, Mark Simmons, appeals from a judgment of $1,200; the judgment stated that if defendant paid plaintiff $1,400 defendant could take possession of the automobile. The judgment was entered by the circuit court sitting without a jury on plaintiff's small claims complaint. On appeal, defendant only contends that the judgment is against the manifest weight of the evidence.

The small claims complaint alleged that "on 7-11, 1992 Defendant orally alleged 1978 Sunbird sold to Plaintiff was in above-average condition. However, vehicle fails to run at all, causing Plaintiff to lose employment, money for college and personal and emotional distress."

Trial was held on October 20, 1992. Defendant's automobile was placed on Wayne Dressel's used car lot for exposure. When plaintiff expressed an interest in the car, she was referred to defendant, who sold her the automobile. Donald Henson testified that he is plaintiff's uncle. Henson went to Dressel's used car lot, started defendant's automobile, a 1978 Pontiac Sunbird, listened to it run, checked the oil, and looked at the engine. Henson noticed that the engine had been repainted and asked Dressel what he knew about the car. Dressel replied that defendant or defendant's father had told him that the engine had been rebuilt; to what extent Dressel did not know. When Henson telephoned defendant, defendant stated that he had rebuilt the engine because the timing chain "went out." Defendant stated that he wanted $2,200 for the car, and Henson responded they wanted to spend approximately $1,500. Approximately 90 minutes later, defendant telephoned Henson and stated that he would sell it for $1,500. In response to Henson's statement that the engine had been rebuilt or repainted, defendant responded that he had personally rebuilt the engine. He further stated, "The only thing that's wrong with it [the automobile] is the air conditioning," which needed the compressor charged. The next day, plaintiff purchased defendant's vehicle.

Henson further testified that several days later, in response to plaintiff's call for assistance, he was able to start the car after the first attempt failed. Because smoke was coming out "real bad," Henson pulled all four spark plugs and observed that they were caked with oil. Henson ran a compression check, and each cylinder would hold only approximately 60 pounds of pressure rather than the 95 to 98 pounds of pressure that a properly functioning cylinder should hold. Air was blowing out of the tray case, coming through the carburetor, and coming out the intake. Henson could turn the crank by hand. He opined that in its present condition the vehicle is worth $200 for parts. The vehicle is drivable, but it would have to be refilled with four quarts of oil daily. Henson had previously rebuilt an automobile engine. Henson conceded that he checked the oil and drove the automobile on the used car lot. Dressel would not allow him to drive it off the lot because it was not insured. Henson explained that he could not tell if the automobile was smoking, because the used car lot "was chat [sic] and dusty."

Plaintiff, age 22, testified that she purchased the Sunbird on July 10, 1992. She had previously gone with her uncle to Dressel's used car lot to look at the vehicle, and Dressel stated that it was a good car. On the Sunbird was a sign: "sold as is." Her uncle repeated to her the representations concerning the vehicle that defendant made to Henson. On July 14, she heard the engine knocking. She drove five miles home and put oil in the car. Plaintiff had to replace the car's battery on July 15 and fill the engine with oil. Between July 11 and July 15 she drove 103 miles. On July 19, she had the oil changed and drove from Valley Park, Missouri, to O'Fallon, Illinois, and back to Valley Park, approximately 60 miles round trip. On July 20, there was no oil in the automobile. On July 21, she took the Sunbird to a mechanic, and after conferring with the mechanic, plaintiff telephoned defendant in an effort to get her money back. Defendant stated that the automobile would stop using oil once the rings became seated; in approximately 500 to 2,000 miles. She then asked, "so after I put two thousand miles on this car, the rings will be seated?" Defendant said, "No, that's not what I said." Defendant explained that he was talking about a normal car, which confused plaintiff. When she next tried to start the automobile, the starter would not work. She did not have the money to repair the car. She paid $1,600 for the Sunbird and operated it for two weeks during which time she checked the oil daily, because Simmons told Henson the engine had been rebuilt and to check the oil. She did not remember how many times she added oil.

Between the time she bought the car and July 15 when she added oil, she had driven the Sunbird 103 miles.

Diane Marie Henson, wife of Donald Henson, testified that when she went to pick up the Sunbird, defendant and Dressel were on the lot. Mrs. Henson asked defendant, "Will this [the Sunbird] make it back and forth to school and get her [plaintiff] to and from her work or whatever?" Defendant responded, "Oh, yes, it was a good little car." Defendant advised that the oil needed to be checked every couple hundred miles for the first 1,000 miles and then every 2,000 or 3,000 miles.

Defendant, a certified airplane and aircraft power-plant mechanic, testified that he had performed standard maintenance and overhauled the automobile engine. He found no abnormal wear and experienced no problems during the overhaul. Defendant has rebuilt "several" automobile engines. The initial problem was the timing gear. Because he had to remove the engine to repair the timing gear, defendant decided to rebuild the engine. He drove the Sunbird, which had previously belonged to his mother-in-law, for approximately a month before deciding to sell it when he found a much newer automobile for sale. During the month defendant's family drove the car, his family experienced no problems, and the vehicle used very little oil. Defendant told "them" that the Sunbird would burn oil, because the rings needed to seat in the cylinders. After 20,000 miles cylinders change shape, and it takes time for the rings to mask the shape of the cylinders. He also told plaintiff that the air conditioner needed to be serviced and the front end needed alignment.

Defendant opined that plaintiff may have possibly driven the car while the oil was low, which caused the rings to wear down. Between July 11, when plaintiff picked up the car, and July 14, when she first checked the oil, the oil could have been used up. Defendant further opined, without having examined the engine, that the cost of repair would be $100 to $500. Defendant could not express an opinion of the value of the Sunbird in its present condition; however, a car that old should be taken to a junkyard. A used engine would cost between $300 and $800, and then the Sunbird would be worth $1,500.

Defendant conceded that cracked rings could be the cause of the oil-consumption problem. Someone could have tampered with the oil plug which resulted in loss of oil. A problem with the timing gear may prevent the automobile from running.

In awarding judgment for the plaintiff, the court found:

> "The evidence is persuasive that there was a verbal representation made relative to the condition of this vehicle and that in

fact—and also that the instructions given relative to what is to be done with making sure the vehicle didn't burn up because of lack of oil were not sufficient. Mr. Simmons' testimony is that he told the folks—the buyers to check it often.

The testimony in evidence which is uncontradicted was it was to be checked at least four days and then another days [sic] afterward if it wasn't checked every day. I just can't buy the fact that this car has to be checked on a daily basis, that running approximately two hundred fifty miles or three hundred fifty miles is sufficient to burn up that engine.

I believe that the evidence is sufficient to persuade me that the representations were improper, that the warranties were breached, and that the damage that was done to the engine was not caused by any misuse of the vehicle by the plaintiff.

I'm not suggesting, by the way, in this comment that the defendant did—the defendant did anything purposely wrong or negligent. That's not the issue in this case. The issue in this case is a breach of a contract and a warranty. And therefore, I believe that the—therefore, I find in favor of the plaintiff."

Defendant initially contends that no warranties were made by defendant to plaintiff. Plaintiff testified that a sign on the Sunbird stated "sold as is." The term "as is" is generally understood to mean that the buyer is purchasing goods in their present condition with whatever faults they may possess. (*Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank* (1983), 117 Ill. App. 3d 284, 292, 452 N.E.2d 1361, 1367.) The term is similar to terms such as "with all faults" or "in its present condition" and implies that the seller is relieved of any further obligation to reimburse for loss or damage because of the condition of the goods. *Lake Bluff Heating & Air Conditioning*, 117 Ill. App. 3d at 292, 452 N.E.2d at 1367.

Section 2—316(3)(a) of the Uniform Commercial Code (UCC) states:

"(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." Ill. Rev. Stat. 1991, ch. 26, par. 2—316(3)(a).

In the case at bar, the vehicle had a sticker which stated that it was "sold as is." Defendant's statement that he had rebuilt the engine did not create an express warranty for the engine. If we were to

accept the argument that defendant had made an express warranty of the engine by merely stating that he had rebuilt it, then anyone who stated that he had made a specific repair of a vehicle would be expressly warranting that repair. Further, plaintiff presented no evidence as to what caused the engine to use excessive amounts of oil. With no such evidence before the court, we are unable to determine the cause of the failure.

Words do have meaning. "Sold as is" when posted on a used car means just that; to rule otherwise would make it meaningless and create a new body of law as to what words need be published and what words need to be said or not said in order to sell something without a warranty.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

RARICK and LEWIS, JJ., concur.