Dana J. HENRY, Plaintiff,

v.

James E. RYAN, et al., Defendants.

No. 90 C 7475.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1991.

---

Frederic R. Klein, Aphrodite Kokolis,
Schiff, Hardin & Waite, Harvey Grossman,

Alan K. Chen, The Roger Baldwin Foundation of ACLU, Inc., Chicago, Ill., for plaintiff.

Candice J. Fabri, James A. Rolfes, Sachnoff & Weaver, Ltd., Chicago, Ill., for amici curiae in opposition to motion to dismiss, Ill. Attys. for Crim. Justice, Nat. Legal Aid and Defender Ass'n.

Charles Lynn Lowder, Bullaro, Carton & Stone, Chicago, Ill., for defendants Goldena McGee, John O'Berhelman and Correctional Medical Systems of Ill., Inc.

James G. Sotos, Schirott & Associates, P.C., Itasca, Ill., for defendants County of DuPage, Richard P. Doria, Sr., Kenneth Wiess, Stephen Nolan, Gary Lavery, Wayne Howlett, Louis Sedares, George Wick, James E. Ryan, Joseph Birkett and Robert Kilander.

Michael McFatridge by Dale M. Wood, Ill. State's Attys. Ass'n, State's Attys. Appellate Prosecutor, Springfield, Ill., for amicus curiae supporting motion to dismiss, Ill. State's Attys. Ass'n.

## ORDER

BUA, District Judge.

On December 4, 1988, plaintiff Dana Henry received a call from DuPage County Deputy Sheriff George Wick.[1] Deputy Sheriff Wick requested that Henry come to his office and answer questions in connection with an investigation into the death of Kristina Wesselman. Wick told Henry that Henry was not a suspect in the investigation. Henry agreed to go and answer questions. Seven days later, Henry received another call from Deputy Sheriff Wick. This time Wick requested that Henry come to his office and provide blood and saliva samples. Henry refused.

Undeterred by Henry's answer, Deputy Sheriff Wick served Henry with a subpoena which directed Henry to provide blood and saliva samples. The subpoena was obtained by George Wick; Robert Kilander, First Assistant States's Attorney of DuPage County; and Joseph Birkett, Assistant State's Attorney of DuPage County. Henry did appear before the DuPage County Grand Jury, but he again refused to provide the samples.

On January 23, 1989, the State's Attorney filed in the Circuit Court of DuPage County a Petition for Rule to Show Cause why Henry should not be held in contempt. The public defender appointed to represent Henry responded by filing a motion to quash the subpoena. On February 6, 1989, the circuit court denied Henry's motion to quash and ordered that he comply with the subpoena. When Henry continued in his refusal to comply, the state court held him in contempt and ordered that he be jailed until he provided the samples. After the circuit court refused to stay enforcement of its order, Henry was taken to the DuPage County Jail.

Upon Henry's arrival at the Jail, he was interviewed by a DuPage County Deputy Sheriff. He was then seen by Goldena McGee, an employee of Correctional Medical Systems of Illinois, Inc. ("CMS"), a private company that provides medical services and health care evaluations to inmates detained at DuPage County Jail. McGee ordered that Henry be placed on suicide watch. Her orders were ratified by John O'Berhelman, a physician and an employee of CMS. Based on these orders, Deputy Sheriffs Kenneth Wiess, Stephen Nolan and Gary Lavery told Henry to strip. They took away his clothes and placed him in an observation cell.

Eight hours after being put in the observation cell, Henry decided to provide the blood and saliva samples. Deputy Sheriffs Wayne Howlett and Louis Sedares took Henry to Glendale Heights Community Hospital where the samples were extracted. Even though Henry provided the samples, he was still detained, naked, in the observation cell until approximately 8:30 p.m. on February 6, 1989. He was then released.

---

1. Since defendants have moved to dismiss, the court takes as true plaintiff's well-pleaded allegations.

Henry has never been arrested, charged or indicted in connection with the Wesselman murder. In fact, Henry has never again been contacted by the DuPage County State's Attorney or Sheriff's Offices in connection with the investigation.

On the basis of these experiences, Henry has brought a 42 U.S.C. § 1983 suit against the County of DuPage; the State's Attorney of DuPage County, James Ryan; the DuPage County Sheriff, Richard Doria; those officials named in the preceding statement of facts; CMS; and two CMS employees. A number of defendants have filed motions to dismiss Henry's complaint. Each will be considered below.

I. Motion to Dismiss—Goldena McGee, John O'Berhelman, CMS

The crux of the motion submitted by Goldena McGee, John O'Berhelman and CMS is that they are entitled to qualified immunity from Henry's request for damages.[2] There is no doubt that CMS and its employees are governmental actors for purposes of a 42 U.S.C. § 1983 suit. In *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Court held that a physician who provided medical services to prison inmates pursuant to a state contract acted under color of state law. Here, CMS entered into a contract with the DuPage County Jail to provide medical services and health care evaluations to those in custody. The company and its employees agreed to assume the government's obligation of providing adequate medical care. Thus, CMS and its employees can be considered state actors.

A determination that CMS and its employees are state actors, though, does not automatically render them eligible for qualified immunity. The Supreme Court has yet to decide whether the shield of quali-

fied immunity should be extended to private persons named in a § 1983 suit. In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982), the Court intimated that it might consider providing private individuals with an affirmative defense, possibly qualified immunity, but the Court has never actually extended that protection. Nor has the issue been decided by the Seventh Circuit.[3]

Those appellate courts that have extended qualified immunity to private persons have done so based on the fact that the individuals were acting pursuant to a valid state law or a governmental contract. Where parties have acted pursuant to a presumptively valid garnishment or attachment statute, courts have been loath to penalize the parties for following what they assumed to be valid law. *Folsom Inv. Co., Inc. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.1982); *Buller v. Buechler*, 706 F.2d 844, 852 (8th Cir.1983). That same reasoning has been applied to private parties acting under a governmental contract. In *De-Vargas v. Mason & Hangar–Silas Mason Co., Inc.*, a company providing services to a laboratory that operated under government contract refused to hire an individual because the company thought that government regulations prohibited the hiring. The Tenth Circuit found that the company was entitled to qualified immunity. However, the court limited its holding to circumstances where private party defendants acted in "accordance with the duties imposed by a contract with a governmental body, perform[ed] a governmental function, and [were] sued solely on the basis of those acts performed pursuant to contract." *De-Vargas*, 844 F.2d 714, 722 (10th Cir.1988), *cert denied*, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). The court explicit-

**2.** As set forth in the motion to dismiss filed by CMS and its employees, a defense of qualified immunity may only bar damages, not injunctive relief.

**3.** Although the issue was recently raised in a motion brought in this district, the qualified immunity issue was not decided. In *Fielder v. County of DuPage*, No. 90–2323, 1991 WL 111282, 1991 U.S.Dist. LEXIS 8126 (N.D.Ill.

June 7, 1991), a pretrial detainee brought a § 1983 suit against, among others, psychiatrists employed by a private medical services company who had placed the detainee on suicide alert and given her anti-psychotic and depressant drugs. The district court skirted the qualified immunity issue by finding that sufficient allegations would have been pled, in any event, to overcome a qualified immunity challenge.

ly reserved judgment "on the propriety of granting qualified immunity when a private contractor performing a governmental function, such as operating a prison, performs acts *not* required by contract, and is sued for those acts." *Id.* at 722 n. 11.

At this stage in the proceedings, it is not possible to determine whether the limited circumstances supporting an extension of immunity are present in this case. Although the company and its employees seem to have been performing a function ordinarily within the government's province, it is not clear whether the actions taken by CMS and its employees were pursuant to a policy dictated by contractual terms and/or applicable state law. Therefore, the court declines to rule on this issue until it obtains facts describing the nature of the services provided by CMS and its employees as well as the nature of CMS's relationship with DuPage County.

**II. Motion to Dismiss—County of DuPage**

■ Among the defendants that Henry seeks to hold accountable for the "policies" inflicted upon him is the County of DuPage. If Henry only sought to sue the County of DuPage on the basis of actions taken by the DuPage County Sheriff's Office and/or the DuPage County State's Attorney's Office, the legal viability of his claims against the County of DuPage would be suspect.[4] However, Henry also alleges that the County of DuPage *itself* followed an established policy, practice or custom which led to the compelled production of body fluid samples without probable cause, (Second Amended Complaint at 13), as well as a policy or practice that failed "to provide for the appropriate care of persons deemed to be at risk for suicide." (Second Amended Complaint at 9.) He con-

tends that the County of DuPage and various officials were acting together in following these "policies." On the basis of these allegations, the court will allow Henry to pursue his claims against the County of DuPage. *Ross v. United States,* 910 F.2d 1422, 1430 n. 5 (7th Cir.1990). *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) ("municipal liability is limited to action for which the municipality is actually responsible"). The remainder of the County's arguments will be addressed below.

**III. Motion to Dismiss—Sheriff Doria, Deputy Sheriff Wick, State's Attorney Ryan, Assistant State's Attorneys Kilander and Birkett**

*A. Collateral Estoppel*

These defendants (along with the County of DuPage) move to dismiss the claims against them on procedural as well as substantive grounds. Their procedural argument relies on the doctrine of collateral estoppel. They argue that the Circuit Court of DuPage County considered and rejected Henry's position that "the Constitution prohibits governmental prosecutors from utilizing grand jury subpoenas to compel blood and saliva samples from non-arrestees without probable cause and exigent circumstances" during the hearing on his motion to quash. (Memorandum of Law in Support of Motion to Dismiss filed by State's Attorney Defendants and Defendants Wick and Doria at 5.) They contend that the prior decision should be given preclusive effect.

■ A federal court is bound to give a state court judgment the same preclusive effect as the judgment would be given in

4. In *Thompson v. Duke,* the Seventh Circuit found that Cook County could not be held responsible for the actions of employees of Cook County Jail. Its ruling was based on a finding that the "Cook County Jail and the Cook County Department of Corrections are solely under the supervision and control of the Sheriff of Cook County.... The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners." *Thompson,* 882 F.2d 1180, 1187 (7th Cir.1989), *cert. denied,* ___ U.S. ___,

110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). *See also Brassfield v. County of Cook,* 701 F.Supp. 679, 680 (N.D.Ill.1988) (same). *But see Buckley v. Fitzsimmons,* No. 88–1939, 1989 WL 64321 (N.D.Ill. June 9, 1989) (Sheriff of DuPage County is a final policymaker for DuPage County); *Holda v. Kane County,* 88 Ill.App.3d 522, 43 Ill.Dec. 552, 559, 410 N.E.2d 552, 559 (1980) ("sheriff is the chief law enforcement officer of the county"); *People ex rel. v. Nellis* 249 Ill. 12, 94 N.E. 165, 169 (1911) ("A sheriff is the principle executive officer of the county....")

the courts of the state where it was rendered. *Jones v. City of Alton,* 757 F.2d 878, 883 (7th Cir.1985). In Illinois, collateral estoppel is "limited to the precise factual or legal issues actually litigated and decided when a prior order was entered." *People v. Williams,* 138 Ill.2d 377, 150 Ill.Dec. 498, 505, 563 N.E.2d 385, 392 (1990). A court must determine that "the issue decided in the prior adjudication is identical with the one presented in the case under review, [that] the party against whom estoppel is asserted was a party or in privity with a party to the prior litigation, [that] there has been a final judgment on the merits in the former suit, and [that] the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Stevenson v. City of Chicago,* 638 F.Supp. 136, 142 (N.D.Ill.1986).

■ In Henry's case, it is questionable whether he had a full and fair opportunity to litigate the Fourth Amendment issue in the prior suit. Even though Henry was represented by an attorney for the motion to quash, the motion was not decided on the basis of a full-blown hearing. Neither side presented exhibits, witnesses or the like in support of their positions.

■ Moreover, Henry was unable to avail himself of the opportunity to appeal once a decision on the motion had been rendered. "[T]he availability of a forum for review [is] an important consideration in determining whether to give preclusive effect to a ruling...." *Stevenson,* 638 F.Supp. at 139. Henry did file an appeal with the Second District Appellate Court. However, his appeal was dismissed after he complied with the subpoena because the issues involved had become moot. As a result, there was never an appellate decision on the merits.

In similar situations where a defendant's opportunity for appellate review has been foreclosed, Illinois courts have excepted the litigant from general collateral estoppel rules and allowed the matter to be relitigated. In *People v. Mordican,* 64 Ill.2d 257, 1 Ill.Dec. 71, 356 N.E.2d 71 (1976), for instance, the Illinois Supreme Court allowed a defendant to relitigate a motion to suppress because his trial had ended in an acquittal, thus foreclosing his opportunity for appeal. In *People v. Stiles,* 95 Ill. App.3d 959, 51 Ill.Dec. 646, 650, 420 N.E.2d 1204, 1208 (1981), this exception was extended to a defendant whose opportunity to appeal a suppression ruling was precluded because he pled guilty. In reaching its decision, the court dismissed the government's argument that relitigation should be barred because the appeal was foreclosed by "an action within the defendant's control:"

> [T]he basis of the exception allowing relitigation of the motion has nothing to do with the nature of a defendant's plea ... Whether it is because the defendant cannot appeal the first denial of his motion because he is acquitted in that action (*Mordican*) or if because, as here, a guilty plea precludes appeal, the result is the same: the ruling is insulated from review. It is that result which ... *Mordican* seeks to avoid by permitting relitigation should the motion be made in a second, distinct suit.

*Id.* 51 Ill.Dec. at 650, 420 N.E.2d at 1208.

The reasoning of *Stiles* is equally applicable to this case. Even though it was Henry's compliance with the court order that foreclosed his opportunity to appeal, the fact remains that the ruling was insulated from review. The state appellate court never addressed the issue on its merits; it merely dismissed the issue as being moot. Under these circumstances, the court cannot find that Henry had a full and fair opportunity to litigate the Fourth Amendment issue. An application of the collateral estoppel doctrine would work an injustice in this case. Therefore, the court rejects defendants' procedural objection and moves to their substantive argument.

### B. Fourth Amendment

Defendants' substantive argument challenges whether the grand jury subpoena which compelled production of blood and saliva samples in this case did, in fact, infringe on Fourth Amendment rights. There is no doubt that the Fourth Amend-

ment is applicable to the grand jury process. *Hale v. Henkel*, 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906), *rev'd on other grounds*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Indeed, in cases such as Henry's where physical evidence is sought from a person, the possibility of a Fourth Amendment violation exists at "two different levels—the 'seizure' of the 'person' necessary to bring him into contact with government agents and the subsequent search for and seizure of the evidence." *United States v. Dionisio*, 410 U.S. 1, 8, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973).

■ The initial question, then, is whether Henry's compelled appearance before the grand jury constituted an unreasonable seizure under the Fourth Amendment. It is now settled law that a compelled appearance before the grand jury does not constitute an unreasonable seizure under the Fourth Amendment. *Dionisio*, 410 U.S. at 13, 93 S.Ct. at 771; *United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 775, 35 L.Ed.2d 99 (1973).

The inquiry, therefore, must turn to the compelled production of blood and saliva samples. Does a grand jury subpoena compelling physical evidence infringe on Fourth Amendment rights? Of the courts that have delved into the question, most have held that such a request was not intrusive in their case because the type of evidence being compelled was already in the public realm. In *Dionisio*, 410 U.S. 1, 93 S.Ct. 764, for instance, the Court found that the grand jury's request did not intrude on defendant's privacy since the physical characteristics of his voice were "constantly exposed to the public." *Id.* at 14–15, 93 S.Ct. at 771–72. Similarly, in *Mara*, 410 U.S. 19, 93 S.Ct. 774, the Court held that a grand jury subpoena compelling a sample of a defendant's handwriting was not violative of Fourth Amendment rights. The Court noted that handwriting, too, is often exposed to the public. "[T]here is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *Id.* at 21, 93 S.Ct. at 776. *See also Davis v. Missis-*

*sippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprinting procedure might comply with the Fourth Amendment); *In re Grand Jury Proceedings (Mills)*, 686 F.2d 135, 139 (3d Cir.1982) ("no greater expectation of privacy with respect to hair which is on public display than with respect to voice, handwriting or fingerprints"), *cert. denied*, 459 U.S. 1020, 103 S.Ct. 386, 74 L.Ed.2d 517 (1982).

■ However, blood (and presumably saliva) samples are a different story. In *Schmerber v. State of California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), the Court held that a blood test constituted a search under the Fourth Amendment. *See Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 1412, 103 L.Ed.2d 639 (1989). In fact, in *Dionisio*, 410 U.S. at 14–15, 93 S.Ct. at 771–72, the Court distinguished the provision of a voice sample from that of blood sample. "The required disclosure of a person's voice is ... immeasurably further removed from the Fourth Amendment protection than [is] the intrusion into the body effected by [a] blood extraction...." *Id.* While no court has explicitly found that a saliva sample is a Fourth Amendment search, extracting a saliva sample seems to involve the same sort of intrusion that goes beyond the physical characteristics exposed to the public and into the security of the person. *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). For instance, in Henry's case a pad was stuck in his mouth to take the saliva sample. Therefore, the court agrees with both parties that the extraction of blood and saliva samples can be considered a search under the Fourth Amendment.

Although the compelled samples may be considered a search under the Fourth Amendment, a search only violates the Fourth Amendment if it is found to be unreasonable. Because the court is dealing with "intrusions into the human body rather than with state interferences with property relationships or private papers, [the court] write[s] on a clean slate."

*Schmerber,* 384 U.S. at 767–768, 86 S.Ct. at 1834.[5]

"The reasonableness of . . . intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure." *Winston v. Lee,* 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985). A threshold requirement, though, is the presence of probable cause. In *Schmerber,* 384 U.S. at 768, 86 S.Ct. at 1834, the Court clearly stated that probable cause must be present in order to justify an intrusion into the body: "The interests in human dignity and privacy which the Fourth Amendment protects forbid any . . . intrusion on the mere chance that desired evidence might be obtained." *Id.* at 770, 86 S.Ct. at 1835. There must be a "clear indication" that evidence will be found in order to justify an intrusion. *Id.* The importance of probable cause was reiterated in *Winston.* There, the Court found that probable cause was present *before* it proceeded to weigh the individual's interests against society's interests. *Id.* at 760–763, 105 S.Ct. at 1616–18.

 On the basis of these cases, it would appear that probable cause is a necessary element of a grand jury subpoena compelling a bodily intrusion. A probable cause requirement, however, seems untenable in the grand jury situation. The purpose of a grand jury is to determine whether there is probable cause to charge an individual with a crime. Burdening a grand jury with a probable cause requirement seems inconsistent with that purpose. For that reason, many courts, most recently the Supreme Court, have rejected the idea of requiring a showing of probable cause in connection with a grand jury subpoena. *See United States v. R. Enterprises, Inc.,* — U.S. ——, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991) ("the Government

cannot be required to justify the issuance of grand jury subpoena by presenting evidence sufficient to establish probable cause").

Nevertheless, a grand jury does not enjoy unbridled investigatory powers. "Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of an investigation out of malice or an intent to harass." *R. Enterprises, Inc.,* 111 S.Ct. at 727. The evidence collected by a grand jury must still be relevant and particularized. This need was recognized in one of the few cases to deal with a blood sample and a grand jury subpoena. In *U.S. v. (Under Seal),* the Fourth Circuit upheld the district court's enforcement of a blood sample subpoena not only because the sample was a minimal physical intrusion, but because the sample would provide highly relevant and probative evidence. *U.S. v. (Under Seal),* 819 F.2d 1139 (1987), *cert. denied,* 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 375 (1987).

The rub is how to ensure that evidence is highly relevant and probative. For the reasons discussed above, a showing of probable cause must be ruled out in the grand jury context. In other contexts where a showing of probable cause has not proved possible, the Court has turned to a showing of individualized suspicion. "When the balance of interests precludes insistence on a showing of probable cause, we have usually required 'some quantum of individualized suspicion' before concluding that a search is reasonable." *Skinner,* 109 S.Ct. at 1417 (quoting *United States v. Martinez–Fuerte,* 428 U.S. 543, 560, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976)). The court finds that such a showing is appropriate here to ensure that the physical evidence collected by the grand jury is sufficiently probative. Accordingly, the court holds that a grand jury subpoena for physical evidence must be based on individualized suspicion.[6]

---

5. The court thus rejects defendants' suggestion that it apply the same standards as those used to evaluate the compelled production of documents.

6. Recently, the Court has eliminated the individualized suspicion requirement in certain civil

cases, primarily those involving employee drug-testing. *See e.g., Skinner,* 489 U.S. 602, 109 S.Ct. 1402 (1989). This is not a case of employee drug-testing. But, even if the balancing test used in *Skinner* and similar cases were applied in this case, the test would require a showing of

In this case, Henry was allegedly told at the time the blood and saliva samples were requested that he was not a suspect. Since it is possible that individualized suspicion was not present here, the court declines to dismiss Henry's complaint on the substantive grounds raised by defendants.

### C. Immunity

█ Defendants argue that even if Henry's Fourth Amendment claim is viable, they are entitled to immunity for their actions. Defendants Doria and Wick of the DuPage County Sheriff's Office claim qualified immunity. Prosecutors in the DuPage County State's Attorney's Office (Ryan, Kilander, and Birkett) claim the more encompassing protection of absolute immunity. The prosecutors' claim to absolute immunity need not be addressed in this case. Since the court finds that defendants' actions in compelling the blood and saliva samples are protected by qualified immunity, the court may assume that qualified immunity applies to the prosecutors without even considering the applicability of absolute immunity. *Gray v. Bell,* 712 F.2d 490, 505 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

Government officials enjoy immunity from civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Although *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826, and *Winston,* 470 U.S. 753, 105 S.Ct. 1611, had been decided at the time of defendants' actions, the unlawfulness of their

actions could not have been apparent. *Schmerber* and *Winston* were concerned with probable cause in the context of search warrants or exceptions to the search warrant requirement. This case, on the other hand, raises the issue of probable cause in the context of grand jury subpoenas. Few cases have actually dealt with grand jury subpoenas compelling production of physical evidence. In those cases that have, like *Dionisio,* 410 U.S. 1, 93 S.Ct. 764, and *Mara,* 410 U.S. 19, 93 S.Ct. 774, the issue of a probable cause showing was never reached because the Court found that the compelled evidence was not protected by the Fourth Amendment. Fewer cases have involved the blood (and saliva) samples requested here. Henry cites one, *In re May 1991, Will County Grand Jury,* 216 Ill.App.3d 1033, 159 Ill. Dec. 853, 576 N.E.2d 522 (1991), which was decided after the actions taken by defendants. The other case which Henry primarily relies on, *In re September Grand Jury,* 104 Ill.App.3d 94, 59 Ill.Dec. 839, 432 N.E.2d 625 (1982), did not even involve a grand jury subpoena.

"Closely analogous cases, those decided before the defendants acted, ... are required to find that a constitutional right is clearly established." *Powers v. Lightner,* 820 F.2d 818, 821 (7th Cir.1987) *quoted in Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Closely analogous cases were not available to guide defendants in this case. Therefore, the court finds that the officers are entitled to qualified immunity from plaintiff's Fourth Amendment claim. This immunity only extends to Henry's claim for monetary relief. His claims for injunctive relief remain intact. *Supreme Court of Virginia v. Consumers Union of the United States,*

particularized suspicion. This case is unlike *Skinner* "where the privacy interests implicated by the search [were] minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of particularized suspicion...." *Id.* 109 S.Ct. at 1417. Henry is an individual who was subpoenaed before a grand jury. In no way did Henry have the diminished expecta-

tions of privacy discussed in the *Skinner* decision. On the other side of the balance, the court has no basis for finding that the government's interest in the proper functioning of the grand jury would be jeopardized by a requirement of individualized suspicion. When the interests are weighed in this case, individualized suspicion wins.

446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980).

## CONCLUSION

Defendants have moved to dismiss Henry's claims on a variety of grounds. For the reasons outlined above, the court has rejected the majority of defendants' arguments. However, the court does find that the officials sued in Henry's Fourth Amendment claim are entitled to immunity from monetary damages. Accordingly, the court dismisses Henry's Fourth Amendment claim for damages against the officials in the DuPage County Sheriff's Office and the DuPage County State's Attorney's Office. The remainder of Henry's claims stand.

IT IS SO ORDERED.