(No. 96392.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VERNON WATSON, Appellant.

*Opinion filed January 21, 2005.—Rehearing denied March 28, 2005.*

Edwin A. Burnette, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Peter Fischer, Veronica Calderon Malavia and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial, defendant, Vernon Watson, was found guilty of two counts of aggravated criminal sexual assault and one count of aggravated kidnapping. He was later sentenced as an habitual offender to natural life in prison without the possibility of parole. The question before us in this appeal is whether the DNA evidence admitted at defendant's trial should have been suppressed because defendant's blood, which was used for DNA testing, was obtained by means of a grand jury subpoena. The circuit court of Cook County denied defendant's suppression motion and the appellate court affirmed. For reasons that follow, we now affirm the lower court judgments.

## BACKGROUND

We include here only a brief factual history, sufficient to address the issue on appeal. A more detailed factual background is contained in the appellate court decision.

On the morning of March 25, 1989, C.A. was attacked as she walked through the forest preserve known as the Dan Ryan Woods on her way to the Metra train station at 91st Street. Just prior to entering the woods, C.A. noticed a man in a dark-blue jogging outfit and gray skullcap running north toward 91st Street on Winchester. A few minutes later, C.A. was grabbed from behind by a man as she walked along the footpath through the woods. The man wrapped his right arm around her at shoulder level and placed his left hand over her mouth. When he did this, C.A. saw her attacker's hands and arms, noting that he was a black man and that he was wearing a dark-blue nylon jogging jacket with two red stripes going down the outside of the sleeves. Also, C.A. sensed that the man was a few inches taller than her 5 feet 4 inches.

The attacker told C.A. that he had a gun and threatened to kill her. He then dragged C.A. off the path to a clearing in a more secluded area within the woods, where he robbed and sexually assaulted her.[1] After the assault, C.A. made her way to a house, where she was able to call the police. Although C.A. had not seen the face of her attacker, she described him to police as a black male, between 20 and 30 years old; about 5 feet 7 inches tall; and weighing about 150 pounds. She also said he had black hair and a medium complexion and had been wearing a blue nylon jacket with two red stripes going down the outside of the sleeves.

During their investigation, the police learned that

[1] C.A. was ordered to disrobe and her attacker then placed her sweater over her face before he sexually assaulted her. Consequently, C.A. never saw his face.

defendant, who fit C.A.'s general description of her attacker, had been convicted in 1980 for armed robbery and rape for attacking a woman in the area of Dan Ryan Woods. The circumstances of that attack were strikingly similar to the circumstances of this case. Police also learned that defendant, after serving $8^{1}/2$ years in prison for the 1980 attack, had been released just 20 days earlier, on May 5, 1989, and was living in the neighborhood near Dan Ryan Woods. In addition, on the same day as the attack, the police located a witness[2] who had seen a black man wearing a dark-blue nylon jogging suit with two red stripes on the sleeves, running in the neighborhood near Dan Ryan Woods about 20 minutes before C.A. was attacked. When shown a photo array, the witness identified defendant as the jogger.

Based on the above information, the police arrested defendant on May 29, 1989, and placed him in a lineup. The witness who identified defendant from the photo array also identified defendant in the lineup. C.A. viewed the lineup and, although she could not positively identify defendant as her attacker, she picked defendant out based on the fact that he had the same general build as her attacker. In a "voice lineup," however, C.A. misidentified a police officer as having the voice of her attacker. Defendant was released from custody the same day he was arrested.

Subsequently, the State learned that semen recovered from the victim was sufficient for testing purposes and that hairs belonging to the attacker also had been recovered. The State took its evidence to the grand jury and, on June 1, 1989, the grand jury issued a subpoena *duces tecum*, which commanded defendant to submit to the taking of body samples, including head hair, pubic hair, blood and semen, to be used for comparison with

---

[2]The witness, an attorney in private practice, was a former Chicago police officer and former assistant State's Attorney.

the recovered samples. When served with this subpoena, defendant accompanied police to the hospital, but refused to sign a consent form for the taking of the samples. As result, no samples were taken at that time.

One week later, on June 7, 1989, a second subpoena was issued by the grand jury, again commanding defendant to submit to the taking of body samples—this time for blood, head hair, pubic hair and saliva. This subpoena was served on defendant on June 13, 1989. Defendant again refused to cooperate. Consequently, on June 29, 1989, the State filed a petition for a rule to show cause why defendant should not be held in contempt.

On July 3, 1989, defendant was brought before the presiding judge of the criminal division of the circuit court of Cook County to answer the rule to show cause. After hearing evidence, the judge found defendant to be in contempt of court. The order was signed at 12:10 p.m. At the same time, the judge was presented with a request for a search warrant for the same body samples listed in the subpoena. The affidavit for the search warrant contained all of the information known to the police at that time, as set forth above. The presiding judge signed the search warrant at 12:15 p.m. on July 3, 1989.

Defendant was presented with both the rule to show cause and the search warrant, yet he persisted in his refusal to comply with the request for body samples. He was then jailed for contempt of court. Two days later defendant purged the contempt by providing samples of his head hair, pubic hair, blood and saliva. These samples were sent to the laboratory of the Federal Bureau of Investigation (FBI) for comparison with the genetic materials recovered from the victim. On February 28, 1990, after receiving the results of the FBI tests, the grand jury indicted defendant on charges of aggravated sexual assault, armed robbery, and aggravated kidnapping in relation to the May 25, 1989, attack.

Defendant filed a motion *in limine* to exclude the DNA profiling evidence compiled by the FBI. Defendant argued that the scientific methods and statistical calculations used to match his DNA to that of the assailant were unreliable. On March 12, 1991, after an extensive *Frey* hearing, the circuit court ruled the DNA evidence inadmissible. The State appealed this ruling and, on appeal, the appellate court vacated the circuit court's judgment, but remanded for further proceedings on the admissibility of the evidence. *People v. Watson*, 257 Ill. App. 3d 915 (1994). After additional hearings, the circuit court ruled, on September 23, 1997, that the DNA profiling evidence was sufficiently reliable for admission. The matter was then set for a hearing on other issues raised in defendant's original motion *in limine*, including whether defendant's arrest on May 29, 1989, and his subsequent seizure and the taking of body samples pursuant to a subpoena *duces tecum*, violated defendant's fourth amendment rights.

On February 26, 1998, after hearing evidence, the circuit court ruled that defendant's warrantless arrest on May 29, 1989, was supported by probable cause. The court also held that the same information provided probable cause for the collection of the body samples. As a result, the circuit court ruled that "whether it was on the basis of the contempt or on the search warrant itself, *** there was sufficient basis to warrant the obtaining of the blood that was taken, that later resulted in the DNA extracted in this case."

A bench trial finally commenced on March 23, 1999. Based on the evidence, including the DNA evidence, defendant was convicted of aggravated criminal sexual assault and aggravated kidnapping. He was sentenced to natural life imprisonment. The convictions were affirmed on appeal by the appellate court. 338 Ill. App. 3d 765.

We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

As stated earlier, the issue in this appeal is whether the DNA evidence admitted at defendant's trial should have been excluded because defendant's blood, which was used for DNA analysis, had been obtained as a result of a subpoena issued by a grand jury.[3] It is defendant's position that existing case law establishes that, absent exigent circumstances, our state and federal constitutions prohibit the compelled taking of bodily samples without an antecedent search warrant issued by a neutral judicial magistrate based on a finding of probable cause. Defendant contends that a grand jury subpoena cannot, constitutionally, be used as a substitute for a search warrant. Defendant further contends that, in the case at bar, the violation of his constitutional rights was particularly egregious because the State procured a grand jury subpoena to compel the taking of his bodily samples as a means of circumventing the warrant requirement of the Illinois Constitution and the fourth amendment, knowing that "probable cause was absent." Defendant concludes that, because the State obtained his blood pursuant to a grand jury subpoena, the State abused the limited power of the grand jury, violated the fourth amendment of the United States Constitution, and abrogated his right to privacy under article I, section 6, of the Illinois Constitution. It follows, according to defendant, that the DNA evidence is the tainted product of these constitutional violations and, therefore, should have been excluded. Because it was not, he contends, his convictions must now be reversed. We disagree.

---

[3]The State conceded that the search warrant, which had been procured at the same time the rule to show cause issued, was never executed and that there was no return on the warrant. Consequently, the appellate court found, as did the trial court, that defendant submitted to the taking of body samples to purge the contempt and, thus, the samples were taken pursuant to the grand jury subpoena.

## Standard of Review

When reviewing a trial court's ruling on a motion to suppress, we apply a deferential standard of review to the court's factual determinations and credibility assessments, reversing those findings only for manifest error. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). However, as to the ultimate legal question of whether the evidence should be suppressed, *de novo* review is appropriate. *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996); *People v. Pitman*, 211 Ill. 2d 502, 512 (2001). In the case at bar, our review of the trial court's decision on the motion to suppress rests on a legal question—whether a grand jury subpoena can compel the taking of bodily samples. Accordingly, our review is *de novo*.

## Probable Cause

The fourth amendment, applicable to the states pursuant to the fourteenth amendment, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oaths or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

Similarly, article I, section 6, of the Illinois Constitution provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

Both the fourth amendment and the Illinois Constitution prohibit "searches" and "seizures" which are "unreasonable." Our Illinois Constitution extends the

"reasonableness" requirement to "invasions of privacy" and, as a result, provides citizens of this state with broader protection from unreasonable intrusions than the fourth amendment. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381 (1992).

In the case at bar, the alleged intrusion upon defendant's privacy rights is the extraction and testing of his blood. On this point, it appears to be well settled that a person has a recognized privacy interest in his blood (*Schmerber v. California*, 384 U.S. 757, 767, 16 L. Ed. 2d 908, 918, 86 S. Ct. 1826, 1834 (1966) (the compulsory administration of a blood test "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment")). Accordingly, we think it undisputed that the compelled taking of defendant's blood and its subsequent testing was an intrusion upon defendant's privacy interests, protected, coextensively, by both state and federal constitutional provisions. Thus, the question before us in this case is not whether an intrusion took place, but whether the intrusion—the compelled withdrawal and testing of defendant's blood— was "reasonable" within the meaning of the fourth amendment and the Illinois Constitution.

In *Schmerber*, the United States Supreme Court addressed a situation involving the government-compelled extraction of a person's blood for chemical analysis. In that case the defendant was under arrest due to his involvement in a car accident when a police officer directed a physician at the hospital to withdraw a sample of the defendant's blood, over his objection, to determine the blood-alcohol content. After finding that the blood test was a "search, which depended, antecedently, upon a seizure of the person, within the meaning of" the fourth amendment (*Schmerber*, 384 U.S. at 767, 16 L. Ed. 2d at 918, 86 S. Ct. at 1834), the Court held that the "means and procedures employed in taking [defendant's] blood

respected relevant Fourth Amendment standards of reasonableness" because probable cause and exigent circumstances existed. *Schmerber*, 384 U.S. at 768-71, 16 L. Ed. 2d at 918-20, 86 S. Ct. at 1834-36. Accordingly, the Court found that the warrantless search was justified under the circumstances.

In the case at bar, defendant contends that the seizure and subsequent search of his blood was unconstitutional because his blood sample was taken without a warrant. He distinguishes *Schmerber* on the grounds that, here, there was neither probable cause nor exigent circumstances and, thus, no basis for dispensing with the warrant requirement.

We note, however, that in the case at bar defendant's blood was taken in connection with a grand jury subpoena. *Schmerber* did not involve a grand jury subpoena and, for that reason, is of limited value on the issue of whether, and under what circumstances, if any, a grand jury may subpoena constitutionally protected physical evidence from a person who comes within the grand jury's investigative purview. To date, the United States Supreme Court has not considered this precise issue.

In the two companion cases, *United States v. Dionisio*, 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973), and *United States v. Mara*, 410 U.S. 19, 35 L. Ed. 2d 99, 93 S. Ct. 774 (1973), the Court upheld the use of grand jury subpoenas for the compelled production of voice and handwriting exemplar samples, respectively. However, in those cases, the Court held that the fourth amendment "is not violated by a grand jury directive compelling production of 'physical characteristics' that are 'constantly exposed to the public' " (*Mara*, 410 U.S. at 21, 35 L. Ed. 2d at 103, 93 S. Ct. at 776, citing *Dionisio*, 410 U.S. at 9, 10, 14, 35 L. Ed. 2d at 76, 77, 79, 93 S. Ct. at 769, 770, 771) because a person has no expectation of privacy in his voice or handwriting. Accordingly, the

Court held that a grand jury subpoena directing the making of a voice recording or the production of a handwriting exemplar does not infringe "upon any interest protected by the Fourth Amendment" and "there was no justification for requiring the grand jury to satisfy even the minimal requirement of 'reasonableness.' " *Dionisio*, 410 U.S. at 15, 35 L. Ed. 2d at 80, 93 S. Ct. at 772. See also *Mara*, 410 U.S. at 22, 35 L. Ed. 2d at 103, 93 S. Ct. at 776 ("the Government was under no obligation *** to make a preliminary showing of 'reasonableness' ").

Although the United States Supreme Court has not yet addressed whether a grand jury may subpoena a witness' physical evidence which is protected by the fourth amendment, *Mara* and *Dionisio* suggest that physical evidence which is constitutionally protected may be the subject of a grand jury subpoena if there is a preliminary showing of probable cause. See *In re Grand Jury Proceedings Involving Vickers*, 38 F. Supp. 2d 159, 167 (D.N.H. 1998) ("Supreme Court precedent in this area suggests that when a person's Fourth Amendment rights are implicated by production demands found in a grand jury subpoena (regardless of the type of evidence sought), the proper remedy is not to require the government (or grand jury) to obtain a search warrant," but to show "that the grand jury subpoena was 'reasonable' "), citing *Dionisio*, 410 U.S. at 15, 35 L. Ed. 2d at 80, 93 S. Ct. at 772. This is precisely the conclusion that was reached by this court in *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381 (1992).

In *Will County* this court was asked to consider whether there were any statutory or constitutional limitations on the grand jury's power to gather physical evidence through the subpoenaing of witnesses. After finding no statutory bar which would prevent a grand jury from issuing a subpoena for physical evidence, we considered whether grand jury subpoenas for noninva-

sive, as well as invasive, physical evidence could be constitutionally reasonable. In each case, we "balanc[ed] the need for official intrusion against the constitutionally protected interest of the private citizen." *Will County*, 152 Ill. 2d at 392.

With regard to the noninvasive physical evidence (*e.g.*, appearance in a lineup, fingerprinting, handwriting and voice exemplars), we first acknowledged that, under the fourth amendment, no preliminary showing of reasonableness was required. See *Will County*, 152 Ill. 2d at 389, citing *United States v. Dionisio*, 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764. Nevertheless, we held that because a person's privacy interests enjoy greater protection under the Illinois Constitution, "some showing of individualized suspicion as well as relevance must be made" before a subpoena for evidence of a noninvasive nature may be issued. *Will County*, 152 Ill. 2d at 393.

With regard to physical evidence of a more invasive nature (*i.e.*, head hair, facial hair, and pubic hair), where the compelled production would constitute a search or seizure under the fourth amendment, we held that our state constitution did not preclude a grand jury from subpoenaing such evidence, but that "more than mere relevancy is required to support issuance of a subpoena." *Will County*, 152 Ill. 2d at 396. We held that "a subpoena for pubic hair samples is reasonable only when warranted by probable cause" (*Will County*, 152 Ill. 2d at 395) and a subpoena for the production of these items, "unsupported by probable cause, is an unreasonable violation of the right to privacy protected by the Illinois Constitution" (*Will County*, 152 Ill. 2d at 399).

Accordingly, in *Will County* we held that a grand jury subpoena may be issued for "invasive" physical evidence, *i.e.*, evidence which would be protected by the fourth amendment, but only if the subpoena was supported by probable cause. Defendant acknowledges this holding,

but claims that the showing of probable cause to support the issuance of a subpoena must be made before a neutral magistrate upon the request for a search warrant. In other words, defendant contends that a grand jury cannot constitutionally subpoena intrusive bodily specimens unless and until the prosecutor properly obtains a search warrant from a judge who has evaluated the justification for the bodily specimens. Moreover, defendant contends that, in the case at bar, there was no probable cause to support the issuance of the subpoena. On both counts, we disagree.

Throughout the opinion in *Will County*, this court made clear that the probable cause requirement was being imposed *on the grand jury*. After discussing *Henry v. Ryan*, 775 F. Supp. 247 (N.D. Ill. 1991), in which the federal district court held that a probable cause requirement could not be imposed on a grand jury subpoenaing blood and saliva specimens, we held:

"We believe, however, that *to exempt the grand jury* from the probable cause requirement in such a case would be to permit intrusions into areas of individual privacy which are protected by the Illinois Constitution." (Emphasis added.) *Will County*, 152 Ill. 2d at 396.

We later concluded:

"We reverse that part of the appellate court's judgment which would allow *the grand jury to subpoena hair samples without establishing probable cause*." (Emphasis added.) *Will County*, 152 Ill. 2d at 400.

We find it noteworthy that, when quashing the subpoenas at issue in *Will County*, we did so not because a search warrant had not been obtained, but because there was no evidence that the grand jury subpoena was supported by probable cause. Further, when discussing the demand for pubic hair samples, we said:

"A demand for pubic hair represents a considerable intrusion into personal privacy and is, without the justification of probable cause, an indignity to the individual subpoenaed. In the case before us, there is no indication that

exigent circumstances dictated that the pubic hairs be taken before it was possible to obtain a warrant. Based on *Schmerber, Mara, Dionisio,* and *Winston,* it is our view that the fourth amendment provides protection from unreasonable demands for pubic hair, *and that a subpoena for pubic hair samples is reasonable only when warranted by probable cause."* (Emphasis added.) *Will County,* 152 Ill. 2d at 395.

At all times our focus remained on the need for probable cause to support the issuance of the subpoena. Thus, we find that the only limitation placed on the issuance of a subpoena for invasive bodily specimens is that it be supported by "probable cause."

We acknowledge that in *Will County* we suggested that "[t]he State's Attorney may procure the evidence through a search warrant, and the evidence may then be presented to the grand jury." *Will County,* 152 Ill. 2d at 397. However, we interpret this sentence to mean that a search warrant is one viable means by which probable cause may be demonstrated to support the taking of bodily samples to be presented to a grand jury. We do not interpret this sentence as imposing a duty on grand juries to obtain search warrants whenever bodily specimens are sought from a grand jury witness. Such a requirement, like the requirement that a specific charge be pending, would "unduly trammel" the grand jury's investigation (see *People v. Allen,* 410 Ill. 508, 517 (1951)) and would be contrary to the investigative purpose of the grand jury as set forth in the opinion.

Defendant expresses concern that fourth amendment rights are not fully protected by a procedure which would allow a grand jury subpoena for intrusive physical evidence to be issued without an antecedent search warrant. Such concerns, we think, are unfounded because, as explained in *In re Grand Jury Proceedings of Mills,* 686 F.2d 135, 145 (3d Cir. 1982) (Gibbons, J., concurring):

"demands of the grand jury are not self-enforcing. A witness may defy the grand jury's directive and move to quash or modify the subpoena, thereby gaining review of the grand jury's action by a judicial officer. [Citation.] In addition, since the proceedings on such motions are not generally ex parte, the individual is afforded greater protection by his presence and ability to challenge the demand than he would receive during the ex parte application for a warrant."

In other words, when confronted with a grand jury subpoena for physical evidence, a witness may file a motion to quash or, as here, simply refuse to comply. It then becomes incumbent upon the prosecutor to demonstrate to a judicial magistrate that the subpoena was supported by probable cause at its issuance.

Since a subpoenaed witness need not surrender his or her bodily samples until there has been judicial review of the validity of the subpoena, the witness' fourth amendment rights are fully protected.

Defendant's final argument is that, in the case at bar, probable cause did not exist at the time the grand jury issued the subpoena for the extraction and testing of his blood and that the prosecutor was aware of this because "the State's Attorney released [defendant] from custody for lack of probable cause." However, we agree with the trial and appellate courts that probable cause for the search and seizure of defendant's blood existed, notwithstanding defendant's release from custody.

As noted earlier, defendant refused on two occasions to comply with the grand jury subpoena for his bodily samples. As a result, the State filed a motion for a rule to show cause why defendant should not be held in contempt for his refusal to comply. The court found defendant in contempt and, at the same time, issued a search warrant, based upon a finding of probable cause, for the same bodily samples. Accordingly, prior to the time that defendant's blood was extracted and tested, there was a finding by a neutral judicial magistrate that probable

cause existed. Further, since the evidence presented to the judicial officer was known to the prosecutor at the time that the grand jury subpoena was sought and obtained, the only conclusion is that probable cause existed to support the issuance of the subpoena.[4] The trial and appellate courts agreed that the evidence presented at the time the rule to show cause was entered provided probable cause for the extraction and testing of defendant's blood.

We, like the courts below, attach no significance to the fact that defendant had been released from custody at the time the subpoena issued. Defendant's release from custody, which was apparently based on the prosecutor's belief that there was insufficient evidence upon which to *indict* defendant, does not require a finding that there was no probable cause for the taking of defendant's blood. As stated in LaFave (see 2 W. LaFave, Search & Seizure § 3.1(b), at 7 (3d ed. 1996)):

> "The fact that there are grounds amounting to probable cause to make an arrest does not mean that a search warrant could lawfully issue upon that same information. Nor can it be said that probable cause for a search warrant would necessarily justify an arrest."

In *Schmerber*, although the Court found that the defendant had been lawfully arrested and that, in general, a search incident to arrest is constitutionally allowable, the Court held that, with regard to the taking of blood:

> "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained." *Schmerber*, 384 U.S. at 769-70, 16 L. Ed. 2d at 919, 86 S. Ct. at 1835.

We conclude that for probable cause to exist to sup-

---

[4]A transcript of the grand jury proceedings has not been produced and, reportedly, could not be obtained because the court reporter suffered a stroke.

port the taking of a person's blood for subsequent testing, there must be substantial evidence to support an objective belief that evidence of criminality will be found. See generally 2 W. LaFave, Search & Seizure, ch. 3 (3d ed. 1996).

In the case at bar, the record shows that defendant fit the physical description given by C.A. of her attacker. In addition, defendant was seen in the area of the assault immediately prior to the attack, wearing clothing identical to that of the attacker. It is also undisputed that defendant had a prior conviction for rape and armed robbery based on an assault which took place in the same area where the current offense occurred, under very similar circumstances. Moreover, genetic material sufficient for comparison was recovered from the victim. This is significant because, had there been no genetic evidence available, there would have been no purpose for requesting defendant's blood. Thus, the totality of the circumstances supports the finding of probable cause.

## CONCLUSION

A lawful grand jury subpoena for constitutionally protected physical evidence, such as blood, may be issued if supported by probable cause. In the case at bar, defendant tested the validity of the subpoena by refusing to comply and a neutral judicial magistrate determined that probable cause existed for the taking of defendant's blood and its subsequent testing. We affirm that finding of probable cause. Accordingly, defendant's DNA evidence was not obtained in violation of his constitutional rights. Defendant's motion to exclude the DNA evidence was properly denied.

The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICES FITZGERALD and KARMEIER took no part in the consideration or decision of this case.