(No. 98597.—

*In re* CHRISTOPHER K., a Minor (The People of the State of Illinois, Appellant, v. Christopher K., Appellee).

*Opinion filed December 15, 2005.*

FREEMAN, J., specially concurring.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee Goldfarb, Susan Schierl Sullivan, Annette Collins, Ashley Romito, Veronica Calderon Malavia and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Cathryn S. Crawford, and Thomas F. Geraghty, of Chicago, and Richard Lindstrom, Haley Stein, Jennifer Lupfer, Jennifer Bruni, Tiffany Fobes, Alejandro Ponce de Leon, Christopher Stanton, Guy Temple, Alfred Wang and Andrew Whitcup, law students, for appellee.

Marsha L. Levick and Nina W. Chernoff, of Philadelphia, Pennsylvania, for *amici curiae* Juvenile Law Center *et al.*

JUSTICE GARMAN delivered the opinion of the court:

After a jury trial, respondent, Christopher K., was adjudicated delinquent for the offense of first degree murder (720 ILCS 5/9—1 (West 1998)). The trial court imposed both a juvenile sentence and an adult sentence pursuant to the extended juvenile jurisdiction (EJJ)

statute of the Juvenile Court Act of 1987 (705 ILCS 405/ 5—810 (West 1998)). The appellate court affirmed respondent's conviction, but reversed his adult sentence. 348 Ill. App. 3d 130, 154. The main issue before this court is whether the law-of-the-case doctrine prohibits the designation of a case as an EJJ prosecution after the appellate court affirms the denial of a motion to prosecute a juvenile as an adult under section 5—805(3) of the Act (705 ILCS 405/5—805(3) (West 1998)). We hold it does not and reverse the appellate court's modification of respondent's sentence. We also affirm respondent's conviction. In doing so, we hold the trial court did not err in determining respondent did not unambiguously invoke his right to counsel.

## BACKGROUND

On January 23, 1999, 16-year-old Willie Lomax was shot and killed. Soon thereafter, respondent, who at the time was 14 years old, was arrested and taken into custody for the shooting. With his mother present, he was questioned by two Chicago Police Department detectives. Ultimately, respondent provided oral and court-reported statements admitting his involvement in the shooting.[1]

On February 1, 1999, the State filed a petition for adjudication of wardship charging respondent with first-degree murder. The State also filed a motion to prosecute respondent as an adult pursuant to section 5—805(3) of the Juvenile Court Act, which gives a juvenile court discretion to permit the prosecution of a minor under the state's criminal laws (705 ILCS 405/5—805(3) (West 1998)). This procedure is known as a discretionary transfer of jurisdiction (705 ILCS 405/5—805(3) (West

---

[1]We set forth the facts surrounding respondent's custodial interrogation in more detail during our discussion of whether respondent invoked his fifth amendment right to counsel.

1998)). After a hearing, the trial court denied the State's discretionary transfer motion, and the State appealed.

The appellate court affirmed the trial court's denial of the State's motion. *In re Christopher K.*, No. 1—99—3175 (2001) (unpublished order under Supreme Court Rule 23). Initially, it rejected the State's contention that respondent was engaged in "adult activities" to such an extent that his behavior warranted transfer. The appellate court then reasoned that the trial court considered all the appropriate statutory factors in ruling on the State's motion. According to the appellate court, the trial court correctly gave the seriousness of the alleged crime and respondent's history of delinquency the most weight. The former factor weighed against respondent, because first degree murder is a serious crime, but the latter factor weighed in his favor, because he had only one prior station adjustment. The remaining six factors enumerated in the discretionary transfer statute were "equally split." Respondent's culpability, premeditated actions, and use of a deadly weapon all weighed against him, but his age, his willingness to participate meaningfully in available services, and the adequacy of the punishment or services available in the juvenile system all weighed in respondent's favor. The appellate court concluded that the record supported the trial court's findings with respect to each statutory factor. Therefore, the appellate court held the trial court did not abuse its discretion in denying the State's motion. *In re Christopher K.*, No. 1—99—3175.

After the appellate court issued its mandate, respondent moved to quash his arrest for lack of probable cause, and to suppress any evidence obtained as a result of his arrest. Respondent also moved separately to suppress the statements he made to the police while in custody. The trial court denied both motions.

On June 20, 2001, the State filed a motion to desig-

nate respondent's case as an EJJ prosecution under section 5—810 of the Juvenile Court Act (705 ILCS 405/5—810 (West 1998)). When a juvenile court designates a case as an EJJ prosecution, the minor subject to the EJJ prosecution is entitled to a jury trial. 705 ILCS 405/5—810(3) (West 1998). If the trial results in a guilty verdict, the trial court must impose a juvenile sentence and an adult sentence, staying the adult sentence on the condition that the minor not violate the provisions of the juvenile sentence. 705 ILCS 405/5—810(4) (West 1998). The trial court granted the State's EJJ motion, and the case proceeded to a jury trial.

At trial, the jury found respondent guilty of first degree murder. Therefore, in accordance with section 5—810, the trial court committed respondent to the Illinois Department of Corrections, Juvenile Division, until the age of 21 (705 ILCS 405/5—750(2) (West 1998)) and imposed an adult sentence of 40 years' imprisonment (730 ILCS 5/5—8—1 (West 1998)), staying the latter on the condition respondent successfully complete his juvenile sentence.

Respondent appealed both his conviction and sentence. 348 Ill. App. 3d at 154. With respect to the sentence, the appellate court found the trial court erred in designating respondent's case as an EJJ prosecution and, accordingly, in imposing a stayed adult sentence. 348 Ill. App. 3d at 154. Specifically, the appellate court held that the law-of-the-case doctrine barred the application of section 5—810 to respondent's case. 348 Ill. App. 3d at 140. The court reasoned that the State's EJJ motion was directed toward the same "ultimate issue" as the State's discretionary transfer motion, which the trial court denied, and which was affirmed on appeal. See 348 Ill. App. 3d at 140. Therefore, the appellate court reversed respondent's adult sentence. 348 Ill. App. 3d at 154. In addition, based on its interpretation of section

5—805 and section 5—810, the appellate court held the legislature intended discretionary transfer motions and EJJ motions to be filed simultaneously. 348 Ill. App. 3d at 142. The appellate court rejected respondent's claims that section 5—810 violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (348 Ill. App. 3d at 142-43), and is unconstitutionally vague (348 Ill. App. 3d at 143-47).

With respect to respondent's conviction, the appellate court held the trial court did not err in denying respondent's motion to suppress his statements to the police. 348 Ill. App. 3d at 151-53. The appellate court also upheld the trial court's denial of respondent's motion to quash his arrest and suppress related evidence. 348 Ill. App. 3d at 153. Therefore, the appellate court affirmed respondent's conviction. 348 Ill. App. 3d at 154.

The State filed a petition for leave to appeal with this court. We allowed the State's petition (177 Ill. 2d R. 315) to address whether the law-of-the-case doctrine bars the designation of a case as an EJJ prosecution after the appellate court affirms the denial of a discretionary transfer motion. We also permitted The Juvenile Law Center and a number of other organizations concerned with the welfare of minors to file an *amicus curiae* brief in support of respondent (155 Ill. 2d R. 345).

## ANALYSIS

### I. Mootness

Prior to oral argument, the State filed a motion to dismiss certain issues respondent raised on cross-appeal as moot. We ordered the State's motion to be taken with the case. As a preliminary matter, we address this motion.

The issues on cross-appeal fall into three categories. First, respondent claims section 5—810 is unconstitutionally vague. He argues the statute is unconstitutionally

vague on its face because it fails to provide adequate notice to a minor as to what acts violate the "conditions" (705 ILCS 405/5—810(6) (West 1998)) of the minor's juvenile sentence for purposes of lifting the stay on the minor's adult sentence. He also argues section 5—810 is unconstitutionally vague on its face because it encourages arbitrary and capricious enforcement of a minor's adult sentence by failing to specify what acts violate the "conditions" of the minor's juvenile sentence. In addition, respondent argues section 5—810 is unconstitutionally vague as applied to him because the trial court did not specifically identify the "conditions" attached to his juvenile sentence, thereby failing to provide him with adequate notice as to what acts could trigger his stayed adult sentence. Respondent also argues the statute is unconstitutionally vague as applied to him because the trial court did not specifically identify the "conditions" attached to his juvenile sentence, thereby encouraging the arbitrary and capricious imposition of his adult sentence.

Second, respondent claims two *Apprendi* violations. He argues the initial designation of his case as an EJJ prosecution violated *Apprendi* because it increased his penalty for the alleged offense beyond the statutory maximum absent proof to a jury beyond a reasonable doubt of the factors necessary to designate a case as an EJJ prosecution. Respondent reasons that the trial court's denial of the State's motion to prosecute him as an adult effectively set his maximum sentence at commitment to juvenile detention until the age of 21. The designation of his case as an EJJ prosecution, he concludes, exceeded this maximum. Additionally, respondent argues the procedure in section 5—810 for lifting the stay on a minor's adult sentence violates *Apprendi*. Respondent reasons that section 5—810 impermissibly allows a trial judge to extend a minor's sentence beyond

the statutory maximum after finding by a preponderance of the evidence that the minor committed a new offense or violated the conditions of the juvenile sentence. He reiterates that the applicable maximum sentence is commitment to juvenile detention until the minor's 21st birthday.

Finally, respondent raises a fifth amendment claim. He argues that while he was in police custody, he invoked his right to counsel, and this right was not honored. Accordingly, he concludes the trial court should have suppressed the statements he made to the police.

In its motion to dismiss, the State points out that respondent turned 21 while this appeal was pending, successfully completing his juvenile sentence. The State concedes respondent's fifth amendment claim may not be moot because it relates to the validity of his conviction, not to his sentence. It argues, however, that this court cannot grant respondent any effectual relief on the other issues raised in his cross-appeal. The State further asserts that the issue of whether the law-of-the-case doctrine bars the designation of respondent's case as an EJJ prosecution falls within the public interest exception to the mootness doctrine.

In objection, respondent requests that this court dismiss as moot all of the issues related to the designation of his case as an EJJ prosecution, including the law-of-the-case issue. He also asserts his fifth amendment claim is not moot and should not be dismissed. In addition, respondent argues that if this court considers the State's law-of-the-case issue under the public interest exception to the mootness doctrine, it should also consider respondent's vagueness and *Apprendi* claims.

The threshold question before us is whether the issues raised in this appeal are moot. An issue on appeal becomes moot where events occurring after the filing of the appeal render it "impossible for the reviewing court

to grant effectual relief to the complaining party." *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). The mootness doctrine stems from the fear that parties to a resolved dispute lack a stake in its outcome sufficient to ensure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult *** questions." *Baker v. Carr*, 369 U.S. 186, 204, 7 L. Ed. 2d 663, 678, 82 S. Ct. 691, 703 (1962), quoted in *Roberson*, 212 Ill. 2d at 435. In general, this court will not consider moot issues. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004).

Respondent's fifth amendment claim is not moot. This court has previously acknowledged that the completion of a defendant's sentence renders a challenge to the sentence moot, but not a challenge to the conviction. *People v. Lynn*, 102 Ill. 2d 267, 272-73 (1984). Nullification of a conviction may hold important consequences for a defendant. *Lynn*, 102 Ill. 2d at 273. Respondent's fifth amendment claim calls into question the validity of his conviction and therefore is not moot.

On the contrary, the issues raised by the State and by respondent regarding the designation of respondent's case as an EJJ prosecution are moot. Under section 5—810, the successful completion of the juvenile sentence imposed on a minor in an EJJ prosecution terminates the minor's adult sentence. 705 ILCS 405/5—810(7) (West 1998). Respondent successfully completed his juvenile sentence upon turning 21. Therefore, he is no longer subject to the adult sentence imposed by the trial court pursuant to section 5—810. As a result, this court cannot grant any meaningful relief to the State or to respondent by ruling on the validity of the trial court's EJJ designation.

While this court generally will not consider moot issues, it may choose to review such issues under the public interest exception to the mootness doctrine. *Robert S.*,

213 Ill. 2d at 45. Therefore, we must inquire whether the moot issues raised by the State and by respondent fall within the public interest exception. The exception applies when (1) an issue is public in nature, (2) it is likely to recur, and (3) an authoritative determination of the issue is desirable for the future guidance of public officers. *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002). The exception is construed narrowly, and requires a clear showing of each criterion. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999).

The law-of-the-case issue raised by the State is public in nature, because it pertains to the administration of the juvenile justice system. The issue is also likely to recur. It has the potential to arise anytime a minor eligible for discretionary transfer is prosecuted. At oral argument, respondent argued the issue implicates only the facts of this case. We disagree. The appellate court's law-of-the-case holding effectively precludes the State from ever filing an EJJ motion after the denial of a discretionary transfer motion is affirmed on appeal, regardless of the underlying facts of the case. Finally, an authoritative determination of the law-of-the-case issue is desirable for the future guidance of public officers. In assessing the desirability of an authoritative determination, this court has consistently looked to whether there is conflicting case law on the issue in question. See, *e.g.*, *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005) (no authoritative determination needed because no conflicting case law); *In re J.B.*, 204 Ill. 2d 382, 387-88 (2003) (same); *Walgreen*, 186 Ill. 2d at 365-66 (same); *Robert S.*, 213 Ill. 2d at 46 (authoritative determination needed because of conflicting case law); *People v. Roberson*, 212 Ill. 2d 430, 436 (2004) (same); *Mary Ann P.*, 202 Ill. 2d at 402; *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 33 (2001); *In re D.L.*, 191 Ill. 2d 1, 8 (2000) (same); *Lucas v. Lakin*, 175 Ill. 2d 166, 170

(1997) (same). While the appellate court's decision in this case does not directly conflict with prior case law regarding law-of-the-case doctrine, none of the cases cited by the appellate court apply the law-of-the-case doctrine to bar consideration of an issue defined by a different statutory section than the issue determined in the first appeal. Compare 348 Ill. App. 3d at 140, with *People v. Tenner*, 206 Ill. 2d 381 (2002); *People v. Patterson*, 154 Ill. 2d 414 (1992); *People v. Partee*, 125 Ill. 2d 24 (1988); *People v. Rodriguez*, 313 Ill. App. 3d 877 (2000); *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank*, 117 Ill. App. 3d 284 (1983); *Miscevich v. Commonwealth Edison Co.*, 110 Ill. App. 3d 400 (1982). Moreover, the appellate court did not clearly explain whether its conclusion that the State must simultaneously file a motion for discretionary transfer and an EJJ motion is *dicta*, or a necessary implication of its holding that the law-of-the-case doctrine bars the consideration of an EJJ motion after the denial of a discretionary transfer motion is affirmed on appeal. See 348 Ill. App. 3d at 141-42. For these reasons, we find that an authoritative determination of the law-of-the-case issue is desirable to guide juvenile judges in the disposition of motions for discretionary transfer and EJJ motions. Because the law-of-the-case issue meets the three criteria of the public interest exception, we choose to consider it on the merits.

We next turn to respondent's vagueness claims. We acknowledge at the outset that facial and as applied vagueness challenges to section 5—810 have the potential to recur anytime a case is designated as an EJJ prosecution. Moreover, whether section 5—810 is unconstitutionally vague on its face is an issue that is public in nature, because if the statute is unconstitutionally vague on its face, it has no valid application. See *People v. Wilson*, 214 Ill. 2d 394, 399 (2005) (noting that where a statute does

not affect first amendment rights, it will not be declared unconstitutionally vague unless it is not capable of any valid application). Whether section 5—810 is unconstitutionally vague as applied to defendant, however, is an issue specific to the facts of defendant's case. Therefore, it is not public in nature. Furthermore, we do not believe an authoritative determination of either of the vagueness claims raised by respondent is necessary at this time. Our research discloses that only one appellate court decision besides the case before us has addressed a vagueness challenge to section 5—810. See *In re J.W.*, 346 Ill. App. 3d 1 (2004). The appellate court's resolution of the vagueness challenge in *J.W.* is not inconsistent with the appellate court's discussion of respondent's vagueness claims in this case. Compare *J.W.*, 346 Ill. App. 3d at 13-15 (holding respondent had no standing to raise vagueness challenge to section 5—810), with 348 Ill. App. 3d at 146-47 (holding the term "offense," as used in section 5—810, is not unconstitutionally vague). We are aware that neither the instant appellate court decision nor *J.W.* addresses the specific arguments respondent raises before this court in support of his claims. This, however, merely further confirms that, as yet, there is no need for an authoritative pronouncement on vagueness challenges to section 5—810. For these reasons, respondent's as-applied and facial-vagueness claims do not fall within the public interest exception to the mootness doctrine.

Finally, we address whether respondent's *Apprendi* claims fall within the public interest exception. These claims are public in nature because, like the law-of-the-case issue, they pertain to the administration of the juvenile justice system. Specifically, they implicate the legislature's decision to allow judges to make EJJ designations and determine whether to impose stayed adult sentences on minors convicted in EJJ prosecutions.

They also are likely to recur, as they may potentially be raised whenever a judge rules on an EJJ motion after the denial of a discretionary transfer motion is affirmed on appeal. However, we conclude that no authoritative determination of these issues is necessary at this time. Our research discloses that the appellate court has thus far uniformly rejected respondent's claim that the initial designation of a case as an EJJ prosecution violates *Apprendi*. See 348 Ill. App. 3d at 143; *J.W.*, 346 Ill. App. 3d at 10-12; *In re Matthew M.*, 335 Ill. App. 3d 276, 289 (2002). The appellate court has yet to address respondent's claim that the procedure for lifting a stay on the minor's adult sentence in an EJJ case violates *Apprendi*. However, as we noted with respect to respondent's vagueness claims, this merely confirms that, at this time, there is no need for an authoritative determination of this issue. Thus, respondent's *Apprendi* claims do not fall within the public interest exception to the mootness doctrine.

In sum, the law-of-the-case issue raised by the State and the vagueness and *Apprendi* claims raised by respondent are moot. However, we shall consider the law-of-the-case issue on the merits because it falls within the public interest exception to the mootness doctrine. We shall also consider the fifth amendment issue raised by respondent on the merits, because it pertains to the validity of his conviction and is therefore not moot.

## II. Law-of-the-case Doctrine

The law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal. See generally 5 Am. Jur. 2d *Appellate Review* §§ 605 through 613 (1995). We now consider whether the doctrine prohibits the designation of a case as an EJJ prosecution after the appellate court affirms the denial of a discretionary transfer motion. This issue presents a question of law. Therefore, we

review it *de novo. P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 234 (1998). Resolving the issue will necessarily require us to examine the statutory language of section 5—805 and section 5—810. An issue of statutory interpretation likewise presents a question of law, which we review *de novo. In re C.N.*, 196 Ill. 2d 181, 208 (2001).

The plain language of a statute is the best indication of the legislature's intent (*In re Madison H.*, 215 Ill. 2d 364, 372 (2005)), and the primary objective of statutory interpretation is to determine and give effect to that intent (*In re Ryan B.*, 212 Ill. 2d 226, 232 (2004)). In doing so, this court will examine a statute as a whole, considering all relevant parts. *In re A.P.*, 179 Ill. 2d 184, 197 (1997). Where the statutory language is clear and unambiguous, we will give effect to it without resorting to other aids of construction. *In re D.F.*, 208 Ill. 2d 223, 229 (2003).

At the outset, we note that nothing in the plain language of either statute prohibits the filing of an EJJ motion after the denial of a discretionary transfer motion is affirmed on appeal. To the contrary, section 5—810 permits the State to file an EJJ motion "at any time prior to commencement of the minor's trial" (705 ILCS 405/5—810(1) (West 1998)). Moreover, section 5—810 specifically provides that "[n]othing in this [s]ection precludes the State from filing a motion for transfer under [s]ection 5—805" (705 ILCS 405/5—810(8) (West 1998)). We will not read exceptions, conditions, or limitations into a statute that the legislature did not express if the statutory language is clear and unambiguous, which it is here. *In re J.W.*, 204 Ill. 2d 50, 62 (2003).

This conclusion, however, does not end our inquiry. These statutory provisions alone do not resolve whether, as a matter of judicial discretion, the law-of-the-case doctrine precludes a trial court from considering an EJJ

motion after the appellate court affirms the denial of a discretionary transfer motion. In general, the law-of-the-case doctrine "prohibits reconsideration of issues which have been decided in a prior appeal." 5 Am. Jur. 2d *Appellate Review* § 605, at 300 (1995). If "there have been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal." 5 Am. Jur. 2d *Appellate Review* § 605, at 300 (1995); see also *Tenner*, 206 Ill. 2d at 395 (law-of-the-case doctrine bars relitigation of issue already decided in same case); *Patterson*, 154 Ill. 2d at 468 (under law-of-the-case doctrine, rule established as controlling in particular case will continue to be law of the case as long as facts remain the same). The underlying purposes of the doctrine are to avoid indefinite relitigation of the same issues, to obtain consistent results in the same litigation, and to ensure that lower courts follow the decisions of appellate courts. 5 Am. Jur. 2d *Appellate Review* § 605, at 301 (1995). While the doctrine is not a jurisdictional limitation on a court's power to address an issue, it does express the practice of courts generally to decline to reopen what has been decided. 5 Am. Jur. 2d *Appellate Review* § 605, at 300-01 (1995); see also *Patterson*, 154 Ill. 2d at 468-69, citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 100 L. Ed. 2d 811, 831, 108 S. Ct. 2166, 2178 (1988).

The State argues the law-of-the-case doctrine does not bar a trial court from designating a case as an EJJ prosecution after the court's denial of discretionary transfer has been affirmed on appeal. It reasons that the question of whether to prosecute a minor as an adult under section 5—805(3) is different from the question of whether to designate the minor's case as an EJJ prosecution under section 5—810. It also points out that the statutory factors considered in disposing of each motion are different. Accordingly, the State asserts the appellate

court erred in concluding a discretionary transfer motion and an EJJ motion both decide the same "ultimate issue."

Respondent argues the law-of-the-case doctrine prohibits an EJJ designation after a denial of discretionary transfer is affirmed on appeal. He asserts that a discretionary transfer motion and an EJJ motion both decide the issue of whether to subject a minor to an adult sentence, and emphasizes that the statutory factors considered in disposing of each motion are essentially identical.

To address whether the law-of-the-case doctrine prohibits the designation of a case as an EJJ prosecution after the denial of a discretionary transfer is affirmed on appeal, we must determine whether a discretionary transfer motion and an EJJ motion decide the same issue. To do so, we return to the statutory language of section 5—805 and section 5—810.

Section 5—805 of the Juvenile Court Act provides, in pertinent part, as follows:

"§ 5—805. Transfer of jurisdiction.

\* \* \*

(3) Discretionary transfer.

(a) If a petition alleges commission by a minor 13 years of age or over of an act that constitutes a crime under the laws of this State and, on motion of the State's Attorney to permit prosecution of the minor under the criminal laws, a Juvenile Judge assigned by the Chief Judge of the Circuit to hear and determine those motions, after hearing but before commencement of the trial, finds that there is probable cause to believe that the allegations in the motion are true and that it is not in the best interests of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(b) In making its determination on the motion to permit prosecution under the criminal laws the court shall consider among other matters:

(i) The seriousness of the alleged offense;

(ii) The minor's history of delinquency;

(iii) The age of the minor;

(iv) The culpability of the minor in committing the alleged offense;

(v) Whether the offense was committed in an aggressive or premeditated manner;

(vi) Whether the minor used or possessed a deadly weapon when committing the alleged offense;

(vii) The minor's history of services, including the minor's willingness to participate meaningfully in available services;

(viii) The adequacy of the punishment or services available in the juvenile justice system.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in this subsection.

\*\*\*

(5) If criminal proceedings are instituted, the petition for adjudication of wardship shall be dismissed insofar as the act or acts involved in the criminal proceedings." 705 ILCS 405/5—805 (West 1998).

To summarize, section 5—805(3) gives a juvenile court authority to permit the prosecution of a minor under the state's criminal laws. For a court to allow a minor to be prosecuted as an adult under the discretionary transfer provision, the minor must be at least 13 years old, the act the minor is alleged to have committed must be a crime, and there must be probable cause to believe the allegations against the minor are true. In addition, the court must determine it is not in the best interests of the public to prosecute the minor in juvenile court. See 705 ILCS 405/5—805(3)(a) (West 1998). In making this determination, the court must consider the eight factors enumerated in the statute, "among other matters" within its discretion. See 705 ILCS 405/5—805(3)(b) (West 1998). If the court determines transfer is appropriate, criminal proceedings are instituted against the minor

and the juvenile petition is dismissed. See 705 ILCS 405/5—805(5) (West 1998).

Section 5—810 of the Juvenile Court Act provides, in relevant part, as follows:

"§ 5—810. Extended jurisdiction juvenile prosecutions.

(1) If the State's Attorney files a petition, at any time prior to commencement of the minor's trial, to designate the proceeding as an extended jurisdiction juvenile prosecution and the petition alleges the commission by a minor 13 years of age or older of any offense which would be a felony if committed by an adult, and, if the juvenile judge assigned to hear and determine petitions to designate the proceeding as an extended jurisdiction juvenile prosecution determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the proceeding shall be designated as an extended jurisdiction juvenile proceeding.

(b) The judge shall enter an order designating the proceeding as an extended jurisdiction juvenile proceeding unless the judge makes a finding based on clear and convincing evidence that sentencing under the Chapter V of the Unified Code of Corrections would not be appropriate for the minor based on an evaluation of the following factors:

(i) The seriousness of the alleged offense;

(ii) The minor's history of delinquency;

(iii) The age of the minor;

(iv) The culpability of the minor in committing the alleged offense;

(v) Whether the offense was committed in an aggressive or premeditated manner;

(vi) Whether the minor used or possessed a deadly weapon when committing the alleged offense.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to other factors listed in this subsection.

* * *

(4) Sentencing. If an extended jurisdiction juvenile prosecution under subsection[ ] (1) results in a guilty plea,

a verdict of guilty, or a finding of guilt, the court shall impose the following:

> (i) one or more juvenile sentences under Section 5—710; and

> (ii) an adult criminal sentence in accordance with the provisions of Chapter V of the Unified Code of Corrections, the execution of which shall be stayed on the condition that the offender not violate the provisions of the juvenile sentence." 705 ILCS 405/5—810 (West 1998).

Section 5—810 thus gives a juvenile court authority to impose an adult sentence on a minor in conjunction with a juvenile sentence, staying the adult sentence pending successful completion of the juvenile sentence. For a court to designate a case as an EJJ prosecution, the minor must be at least 13 years old, the act the minor is alleged to have committed must be a felony if committed by an adult, and there must be probable cause to believe the allegations against the minor are true. See 705 ILCS 405/5—810(1) (West 1998). If these criteria are met, the court must then designate the proceeding as an EJJ prosecution unless clear and convincing evidence demonstrates an adult sentence would be inappropriate. In making this finding, the court must consider the six factors enumerated in the statute. See 705 ILCS 405/5—810(1)(b) (West 1998). If a case designated as an EJJ prosecution results in a finding of guilt, both a juvenile sentence and an adult sentence are imposed, and the latter is stayed. See 705 ILCS 405/5—810(4) (West 1998).

Based on the language of section 5—805(3) and section 5—810, it is apparent that a discretionary transfer motion and an EJJ motion decide distinct issues. Section 5—805(3) allows the State to prosecute a minor "under the criminal laws" (705 ILCS 405/5—805(3) (West 1998)), meaning that the minor is prosecuted in the same manner as an adult offender. Adult prosecution subjects the minor to adult sentencing. For instance, a minor who, like respondent, is convicted of first degree murder (720

ILCS 5/9—1 (West 1998)) faces a minimum sentence of 20 years' imprisonment (730 ILCS 5/5—8—1(a)(1)(a) (West 1998)). The minor convicted and sentenced as an adult has *no possibility* of avoiding the adult sentence. By contrast, section 5—810 subjects a minor to a *potential* adult sentence that the minor may or may not be required to serve, depending on the minor's successful completion of a juvenile sentence. By way of example, a minor who, like respondent, is convicted of first degree murder in an EJJ prosecution faces commitment to juvenile detention until the age of 21 (705 ILCS 405/5—750(2) (West 1998)) and the *prospect* of a minimum adult sentence of 20 years' imprisonment (730 ILCS 5/5—8—1(a)(1)(a) (West 1998)). The minor convicted in an EJJ prosecution remains within the juvenile justice system as long as he does not violate the conditions of his juvenile sentence or commit a new offense (705 ILCS 405/5—810(4), (6) (West 1998)). Thus, section 5—810 reflects the legislature's intent to show minors who qualify for the application of the statute greater leniency than minors who qualify for discretionary transfer, while still providing them with a tangible incentive to avoid flouting their juvenile sentences or reoffending. In this respect, section 5—810 differs significantly from section 5—805(3). It follows that the issue of whether to designate a case as an EJJ prosecution is not the same as the issue of whether to prosecute a minor as an adult under section 5—805(3).

Our conclusion is further supported by the fact that the inquiry underlying a discretionary transfer motion is distinct from the inquiry underlying an EJJ motion. The initial factors that qualify a minor's case for discretionary transfer and an EJJ designation are essentially the same. The minor must be at least 13 years old, there must be probable cause to support the allegations against the minor, and the minor must be alleged to have com-

mitted a crime (705 ILCS 405/5—805 (West 1998)) or an act that is a felony if committed by an adult (705 ILCS 405/5—810 (West 1998)). After these initial factors are met, however, the inquiries underlying a discretionary transfer motion and an EJJ motion diverge. In the case of a discretionary transfer motion, the trial court must consider whether it is in the best interests of the public to prosecute the minor as an adult. 705 ILCS 405/5—805(3)(a) (West 1998). In the case of an EJJ motion, once the initial qualifying factors are met, a rebuttable presumption arises that the case will be designated as an EJJ prosecution (705 ILCS 405/5—810(1) (West 1998)), and the designation will remain unless the court finds by clear and convincing evidence that an adult sentence would be inappropriate for the minor (705 ILCS 405/5—810(1)(b) (West 1998)). It is true that some of the statutory factors a trial court must consider in determining whether discretionary transfer is in the best interests of the public overlap with the statutory factors a trial court must consider in determining whether an adult sentence would be appropriate for the minor under the EJJ statute. However, these factors are not identical. Under section 5—805(3), the trial court must consider "[t]he minor's history of services, including the minor's willingness to participate meaningfully in available services," and "[t]he adequacy of the punishment or services available in the juvenile justice system," as well as "other matters" within the court's discretion. 705 ILCS 405/5—805(3)(b), (3)(b)(vii), (3)(b)(viii) (West 1998). These factors are not considered in deciding whether to designate a case as an EJJ prosecution. See 705 ILCS 405/5—810(1)(b) (West 1998). It is entirely conceivable that a trial court could determine on the basis of the eight factors listed in section 5—805(3), as well as other matters within its discretion, that it would be inappropriate to try a minor as an adult, but that, on the basis of the six

factors listed in section 5—810(3), it would be appropriate to designate a minor's case as an EJJ prosecution.

Previous decisions of this court cited by respondent in support of affirming the judgment of the appellate court are distinguishable. In *People v. Tenner*, this court concluded the law-of-the-case doctrine was inapplicable because the case at issue, which involved the defendant's second postconviction petition, was not the same case as either that involving his first postconviction petition or his federal *habeas corpus* petition. *Tenner*, 206 Ill. 2d at 395-96. *People v. Williams*, 138 Ill. 2d 377 (1990), and *People v. Taylor*, 50 Ill. 2d 136 (1971), relied on by *Williams*, both involved the State's attempt to relitigate fourth amendment suppression issues after the suppression order had become final. In *Williams*, this court stated the rule in *Taylor* as follows:

> "*Taylor*'s procedural rule is simple: A suppression order may be an appealable order ***, and, if it is, the State must either appeal or not. Except for seeking timely reconsideration by the same or a successor judge of the court in which the order was entered [citation], the State 'cannot now have [the] order reviewed by another trial judge' and 'cannot [before such a judge] retry the issues therein decided' [citation]." *Williams*, 138 Ill. 2d at 389-90.

The court went on to state that the *Taylor* rule was not strictly driven by the law-of-the-case doctrine, but was "a discrete rule of Illinois procedure, independent of such related doctrines as collateral estoppel, law of the case, or even *res judicata*." *Williams*, 138 Ill. 2d at 392.

In light of the foregoing, we hold the law-of-the-case doctrine does not prohibit the designation of a case as an EJJ prosecution after the appellate court affirms the denial of a motion for discretionary transfer. Therefore, where a trial court denies a motion for discretionary transfer, the denial is affirmed on appeal, and the State subsequently files an EJJ motion, the trial court must consider the EJJ motion, as the trial court did in this case.

III. Invocation of Fifth Amendment Right to Counsel

Finally, we address whether the statements respondent made while in custody were obtained in violation of his fifth amendment right to counsel. This issue requires us to review the trial court's ruling on respondent's motion to suppress. Review of a motion to suppress presents both questions of law and fact. *People v. Smith*, 214 Ill. 2d 338, 347 (2005). A trial court's credibility determinations and findings of historical fact will be upheld on review unless they are against the manifest weight of the evidence. *People v. Watson*, 214 Ill. 2d 271, 279 (2005). However, the ultimate legal question of whether the evidence should be suppressed is reviewed *de novo*. *Watson*, 214 Ill. 2d at 279.

The testimony at the hearing on respondent's motion to suppress revealed the following facts. On the afternoon of January 31, 1999, respondent turned himself in to the police and was placed under arrest in connection with the shooting of Willie Lomax. One of the arresting officers read respondent his *Miranda* rights, and respondent stated he understood them. Respondent's mother, who was present, stated the same. Respondent was then taken to the district police station, accompanied by his mother. The arresting officers did not question respondent about the shooting.

From the district police station, respondent was transferred to the area police headquarters. Detectives Steven Buglio and Edward Winstead met him there in an administrative room. Detective Winstead again advised respondent of his *Miranda* rights. When asked if he understood those rights, respondent answered "yes." Respondent's mother also acknowledged that she understood the *Miranda* rights.

It is undisputed that, at this time, respondent mentioned a lawyer. However, the testimony presented at the suppression hearing varies regarding what respondent actually said. Respondent's mother recalled respon-

dent saying, "I think I should have a lawyer." Respondent testified, "I asked them [the detectives] if I would need a lawyer." Detective Winstead testified that respondent asked him "[D]o I need a lawyer?" and that he answered respondent by saying "[T]hat's not my call."

After the exchange between Detective Winstead and respondent, respondent's mother asked if she could speak with respondent alone. Both detectives left the room and began preparations for a lineup. There is no indication in the record that respondent talked to his mother about a lawyer after the detectives left, or that respondent's mother took any action to secure a lawyer for respondent.

Detective Winstead returned once to the room before the lineup to see if respondent and his mother needed anything. He did not ask respondent about the shooting at this time. Shortly thereafter, respondent participated in the lineup.

When the lineup was over, a youth investigator was summoned to the police station. After the youth investigator arrived, Detective Winstead again read respondent his *Miranda* rights. Respondent and his mother both indicated they understood those rights, and respondent proceeded to speak to the detectives about Lomax's shooting.

The detectives left the room once they finished speaking with respondent and called an assistant State's Attorney to the police station. When the assistant State's Attorney arrived, respondent was given further *Miranda* warnings. He continued to cooperate with the police and ultimately provided a court-reported statement.

Based on these facts, the trial court found that:

"[A]s a matter of fact *** the Minor Respondent asking the question 'Do I need a lawyer' does not suggest his implication *** of a right to remain silent. He was looking for advice. The police were wise *** not to give him advice. They left him alone with his mother and he made his decision."

Accordingly, the trial court denied respondent's motion to suppress the statements respondent made while he was in custody.

Respondent argues the trial court erred in denying his motion to suppress. He reasons that when he said either "Do I need a lawyer?" or "I think I should have a lawyer," his statement was sufficiently clear to invoke his fifth amendment right to counsel. Respondent and *amici* urge this court to focus on respondent's youth in determining whether his statement constituted an invocation of his right to counsel. In support of doing so, they claim the United States Supreme Court has historically viewed minors' constitutional rights differently than those of adults. They also cite numerous psychological and developmental differences between minors and adults, arguing minors are more likely than adults to couch their invocation of the right to counsel in an inquiry about possible counsel, to use indirect language, and to refrain from repeatedly requesting counsel. Respondent's invocation was, they argue, sufficiently clear for a 14-year-old. Therefore, they conclude, all questioning should have ceased after respondent mentioned a lawyer.

In response, the State argues respondent's statements were properly admitted into evidence. The State asserts that the arguments of respondent and *amici* ignore the specific facts at issue, which demonstrably prove that, under the circumstances, respondent's question "Do I need a lawyer?" could not have reasonably been understood as an invocation of counsel. Respondent, the State suggests, was an intelligent and capable minor, who turned himself in to the police on his own volition, understood his *Miranda* rights, and had his mother present with him throughout the fairly short police detention and interrogation. According to the State, the facts show the detectives responsible for interviewing

respondent reasonably understood his question to be a request for their advice, not a request for counsel. The State argues that the relevant inquiry must focus on the facts at hand, not a hypothetical situation involving a hypothetical 14-year-old. Thus, the State concludes respondent's question was not sufficiently clear to invoke his fifth amendment right to counsel.

Prior to any interrogation by law enforcement officials, a person in custody must be advised of the right to remain silent and the right to counsel. *People v. Villalobos*, 193 Ill. 2d 229, 233 (2000), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612 (1966). A suspect who expresses the desire to deal with police only through counsel is not subject to further interrogation until counsel has been made available, unless the suspect initiates further communication with the police. *People v. Olivera*, 164 Ill. 2d 382, 389-90 (1995), citing *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1800, 1884-85 (1981). To determine whether statements obtained during custodial interrogation may be used against an accused, a court must decide whether the accused actually invoked his right to counsel, and if so, whether he then initiated further conversation with the police so as to knowingly and intelligently waive his previously asserted right. *People v. Evans*, 125 Ill. 2d 50, 74-75 (1988), citing *Smith v. Illinois*, 469 U.S. 91, 95, 83 L. Ed. 2d 488, 493-94, 105 S. Ct. 490, 492-93 (1984). This case involves the former inquiry. Accordingly, it requires us to clarify the standard we apply to determine whether a suspect has invoked the right to counsel.

This court's leading discussion of the invocation issue is *People v. Krueger*, 82 Ill. 2d 305 (1980). In *Krueger*, testimony at the defendant's suppression hearing revealed that, after the written waiver of his *Miranda* rights, the defendant answered questions about several

burglaries. *Krueger*, 82 Ill. 2d at 308. However, when the questioning turned to the alleged homicide for which the defendant was arrested, the defendant made a remark variously described by the investigators who conducted his questioning as "Maybe I ought to have an attorney," "Maybe I need a lawyer," and "Maybe I ought to talk to an attorney." *Krueger*, 82 Ill. 2d at 308. When the defendant made the remark, the investigators continued to question him, and shortly thereafter, the defendant gave a written statement admitting his responsibility for the homicide. *Krueger*, 82 Ill. 2d at 308.

In *Krueger*, this court refused to interpret the *Miranda* decision as requiring "that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel." *Krueger*, 82 Ill. 2d at 311. The court observed that the record established the defendant was a person of normal intelligence, the defendant fully understood his *Miranda* rights, the defendant waived those rights, his interrogation lasted only a short while, and there was no indication he was under any coercion or duress other than that inherent in every custodial setting. *Krueger*, 82 Ill. 2d at 311. While the court also acknowledged that, according to the evidence, none of the investigators considered the defendant's comment to be a request for counsel, it declined to place "undue emphasis or weight" on the investigators' subjective beliefs. *Krueger*, 82 Ill. 2d at 311. Instead, the court concluded "[u]nder the present facts, we find such belief [the investigators' belief the defendant did not invoke his right to counsel] to have been reasonable." *Krueger*, 82 Ill. 2d at 312. Accordingly, the court held that because, in the instant case, a more positive indication of a desire for an attorney was required, the investigators did not violate the defendant's fifth amendment right to counsel. *Krueger*, 82 Ill. 2d at 312.

After *Krueger* was decided, the United States Supreme Court handed down its decision in *Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S. Ct. 2350 (1994). In *Davis*, the United States Supreme Court considered how police should respond when a suspect makes a reference to an attorney that is insufficiently clear to invoke the right to counsel. *Davis*, 512 U.S. at 454, 129 L. Ed. 2d at 368, 114 S. Ct. at 2352. The petitioner in *Davis* waived his right to remain silent and his right to counsel both orally and in writing, but stated "Maybe I should talk to a lawyer" an hour and a half into his interview with investigators. *Davis*, 512 U.S. at 455, 129 L. Ed. 2d at 368, 114 S. Ct. at 2353. At that point, the investigators attempted to clarify whether the petitioner wanted an attorney, to which the petitioner responded "No, I'm not asking for a lawyer" and "No, I don't want a lawyer." *Davis*, 512 U.S. at 455, 129 L. Ed. 2d at 368, 114 S. Ct. at 2353. After a short break, the investigators reminded the petitioner once again of his rights to remain silent and to counsel, and continued on with the interview. *Davis*, 512 U.S. at 455, 129 L. Ed. 2d at 369, 114 S. Ct. at 2353.

In finding against the petitioner, the Court emphasized that determining whether a suspect actually invoked his right to counsel is an "objective inquiry." *Davis*, 512 U.S. at 458-59, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. According to the Court, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," the officer is not required to cease questioning the suspect. (Emphasis in original.) *Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. The Court went on to state that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circum-

stances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355. It then rejected the petitioner's argument that law enforcement officers should be required to stop questioning a suspect immediately upon the suspect's ambiguous or equivocal reference to an attorney. *Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 372, 114 S. Ct. at 2355. Specifically, the Court held that "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis*, 512 U.S. at 461, 129 L. Ed. 2d at 373, 114 S. Ct. at 2356. In so holding, the Court also noted that, when a suspect makes an ambiguous or equivocal reference to an attorney, it often will be good police practice to clarify whether the suspect actually wants counsel, as the investigators did in *Davis*, 512 U.S. at 461, 129 L. Ed. 2d at 373, 114 S. Ct. at 2356. Such clarification, however, is not required. *Davis*, 512 U.S. at 461-62, 129 L. Ed. 2d at 373, 114 S. Ct. at 2356.

This court applied the *Davis* holding in *People v. Oaks*. *People v. Oaks*, 169 Ill. 2d 409 (1996), *rev'd on other grounds*, *In re G.O.*, 191 Ill. 2d 37, 45-50 (2000). In *Oaks*, the defendant inquired "Should I see a lawyer?" in response to an investigator's question about whether the defendant had any problem with memorializing the oral statement he had just given. *Oaks*, 169 Ill. 2d at 452. The investigator initially responded "[T]hat's up to you," but also made further comments urging the defendant to give a written statement. *Oaks*, 169 Ill. 2d at 452-53. After summarily concluding that the defendant's remark "Should I see a lawyer?" was ambiguous (*Oaks*, 169 Ill. 2d at 451), this court applied *Davis* and held that, absent an unambiguous or unequivocal request for counsel, the investigators had no obligation to stop questioning the defendant (*Oaks*, 169 Ill. 2d at 453). As

in *Davis*, this court noted that it would have been good police practice for the investigators to clarify whether the defendant actually wanted an attorney. *Oaks*, 169 Ill. 2d at 453. However, they were not required to do so. *Oaks*, 169 Ill. 2d at 453.

While this court's adherence to the holding in *Davis* has been clear since *Oaks*, this court has yet to express any opinion on the *Davis* objective test. At this time, we note that the objective test is consistent with the approach we set forth in *Krueger*. There, we emphasized that while "an assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel." *Krueger*, 82 Ill. 2d at 311. After setting forth this threshold standard, we proceeded to examine the circumstances surrounding the defendant's purported invocation of the right to counsel. *Krueger*, 82 Ill. 2d at 311. Ultimately, we concluded that, in light of the circumstances, the investigators reasonably believed the defendant's comment was not a request for counsel. *Krueger*, 82 Ill. 2d at 312; see also *People v. Smith*, 102 Ill. 2d 365, 376 (1984) (Simon, J., dissenting, joined by Goldenhersh and Moran, JJ.) ("The focus of a reviewing court should be on whether the defendant's alleged assertion of his right to counsel, standing alone or in conjunction with his earlier statements or actions insofar as they shed light on his desires, were sufficient to be understood as such an invocation by a reasonable man in the interrogating officer's position" (emphasis omitted)), *rev'd on other grounds*, *Smith*, 469 U.S. at 99-100, 83 L. Ed. 2d at 496-97, 105 S. Ct. at 495. This approach is essentially the same as that endorsed by *Davis*. Thus, for the sake of clarity, we now formally recognize our adherence to the *Davis* objective test.

Respondent correctly points out that the holding in

*Davis* is limited to the situation where the alleged invocation of the right to counsel comes after a knowing and voluntary waiver of the suspect's *Miranda* rights. *Davis*, 512 U.S. at 461, 129 L. Ed. 2d at 373, 114 S. Ct. at 2356. By implication, this suggests the United States Supreme Court has left open the issue of whether the objective test applies in a prewaiver setting. We believe the objective test set forth in *Davis* can be applied to situations where, as here, the suspect makes a reference to counsel immediately after he has been advised of his *Miranda* rights. See, *e.g.*, *United States v. Brown*, 287 F.3d 965, 971-73 (10th Cir. 2002) (applying *Davis* in prewaiver situation); *United States v. Muhammad*, 120 F.3d 688, 697-98 (7th Cir. 1997) (same); *Ex parte Cothren*, 705 So. 2d 861, 862-67 (Ala. 1997) (same); *Moore v. State*, 321 Ark. 249, 257, 903 S.W.2d 154, 157-58 (1995) (same). In such a case, the relevant inquiry should remain whether a reasonable officer in the circumstances would have understood only that the suspect *might* be invoking the right to counsel (*Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355), or stated alternatively, whether the suspect's articulation of the desire to have counsel present was sufficiently clear that a reasonable officer in the circumstances would have understood the statement to be a request for an attorney (*Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371, 114 S. Ct. at 2355). The fact waiver has not yet occurred can simply be subsumed into the objective test. That is, a trial court may consider the proximity between the *Miranda* warnings and the purported invocation of the right to counsel in determining how a reasonable officer in the circumstances would have understood the suspect's statement. The primary focus of the inquiry, however, should remain on the nature of the actual statement at issue. See, *e.g.*, *Evans*, 125 Ill. 2d at 75 (holding that defendant never invoked right to counsel "equivocally, ambiguously or otherwise"

where questions of "You mean, I can have a PD here, or do you mean I have to wait?" and "We can take time for you to get a PD, right?" asked during *Miranda* warnings merely constituted inquiries into the availability of a public defender); *People v. Smith*, 102 Ill. 2d 365, 376 (1984) (Simon, J., dissenting, joined by Goldenersh and Moran, JJ.) ("[T]his court has required *** that a statement invoking the right [to counsel] be at least sufficiently free of indecision or double meaning to reasonably inform the authorities that [the defendant] wishes to speak to counsel"), *rev'd on other grounds, Smith,* 469 U.S. at 99-100, 83 L. Ed. 2d at 496-97, 105 S. Ct. at 495.

This brings us to the contention of respondent and *amici* that respondent's age should be the determinative factor in our analysis of whether respondent invoked his right to counsel. We decline to adopt this approach. Doing so would shift the focus of the invocation analysis away from what is actually said to a single characteristic of the person saying it. In this case, regardless of what a hypothetical 14-year-old would possibly have meant when making the statement respondent made, the relevant inquiry must focus on what the police reasonably believed the statement to mean, under the particular circumstances, with regard to this respondent. Respondent's age is not wholly irrelevant to this inquiry, but it is merely one of multiple factors the trial court could permissibly have considered in reaching its conclusion. *Cf. G.O.,* 191 Ill. 2d at 55 (holding with respect to voluntariness inquiry that a juvenile's confession should not be considered involuntary simply because the juvenile is denied the opportunity to confer with a parent or other concerned adult before or during interrogation, but noting that this factor may be relevant in determining whether a juvenile's confession was voluntary). We note that respondent and *amici* have not cited any authority in which this court or the United States Supreme Court

has held that, when assessing an alleged invocation of the right to counsel by a minor, a court must factor the minor's youth into the analysis.

Applying the foregoing principles to this case, we find the trial court did not err in denying respondent's motion to suppress. At the outset, we note the trial court determined as a matter of fact that, after being advised of his *Miranda* rights, respondent asked, "Do I need a lawyer?" This characterization of respondent's statement is consistent with respondent's own testimony and with Detective Winstead's testimony. Therefore, the trial court's finding that respondent asked the question "Do I need a lawyer?" is not against the manifest weight of the evidence. It is this statement we must examine.[2]

In light of the circumstances, respondent's query "Do I need a lawyer?" was not sufficiently clear that a reasonable police officer would have understood it to be a request for an attorney. While respondent's inquiry came immediately after Detective Winstead finished reading the *Miranda* warnings, it was phrased as a request for advice, not as an assertion of a desire to obtain counsel. We note that the actual content of the statement is virtually identical to that of the statement we found to be ambiguous in *Oaks*, "Should I see a lawyer?" *Oaks*, 169 Ill. 2d at 451 (defendant's fifth amendment right to counsel not violated by the continuation of questioning after his ambiguous remark "Should I see a lawyer?"). In addition, despite the fact respondent was only 14 years old at the time of his exchange with Detective Winstead,

---

[2]We are aware the trial court referred to the invocation of respondent's "right to remain silent," not the invocation of respondent's right to counsel, in finding that respondent asked, "Do I need a lawyer?" This, however, has no bearing on the trial court's factual finding that respondent asked, "Do I need a lawyer?" In any event, it is clear to us from the context of the court's statement that the court was referring to respondent's right to counsel.

the evidence in the record establishes he was articulate and above average in intelligence. There is no indication respondent was incapable of simply saying "I want a lawyer." When respondent made his ambiguous reference to a lawyer, Detectives Winstead and Buglio acted appropriately by allowing respondent's mother, who intervened on respondent's behalf, to confer with her son in private. Although they were not obligated to cease questioning at that point, the detectives' decision to do so gave respondent the opportunity to ask his mother for advice regarding counsel. The trial court did not err in concluding respondent's statement was not sufficiently clear to invoke his right to counsel.

## CONCLUSION

We hold that the law-of-the-case doctrine does not bar the designation of a case as an EJJ prosecution after a motion for discretionary transfer has been affirmed on appeal. Therefore, we reverse that part of the appellate court's judgment which modified respondent's sentence. We also hold the trial court did not err in determining respondent did not unambiguously invoke his right to counsel. Accordingly, we affirm that part of the appellate court's judgment which affirmed respondent's conviction.

*Appellate court judgment affirmed in part*
*and reversed in part.*

JUSTICE FREEMAN, specially concurring:

I agree with the majority's disposition of those issues it chooses to reach. There was no fifth amendment violation in allowing defendant's confession into evidence, and defendant's extended juvenile justice (EJJ) prosecution does not run afoul of the "law of the case" doctrine. However, unlike the majority, I believe it would be proper to address defendant's *Apprendi* challenge, and I would do so. Accordingly, I write separately to explain why I do not join the majority's mootness analysis.

Because defendant has turned 21, all issues save his fifth amendment challenge are moot. Accordingly, we normally would not consider them. 217 Ill. 2d at 358. However, we can transcend mootness considerations when we conclude that it would be in the public interest to do so. As the majority notes, there are three factors we consider when determining whether to apply the public interest exception: the issue must be public in nature, it must be likely to recur, and an authoritative determination of the issue must be desirable for the future guidance of public officers. 217 Ill. 2d at 359-60. I agree with the majority that the first two factors are satisfied with respect to both the "law of the case" issue and defendant's *Apprendi* challenge. The majority chooses to reach the former, but not the latter based solely on the third factor of the public interest test: that an "authoritative determination of the issue is desirable for the future guidance of public officers." 217 Ill. 2d at 360. The majority concludes that this factor is satisfied for the "law of the case" issue (217 Ill. 2d at 361), but not for *Apprendi* (217 Ill. 2d at 363).

The majority seems to intimate that this distinction is warranted because there is conflicting authority on "law of the case," but not on *Apprendi*.[3] Compare 217 Ill.

---

[3]It concerns me somewhat that this court seems to be drifting towards using the existence of "conflicting authority" as a surrogate for the actual third factor of the public interest exception test. See 217 Ill. 2d at 360-61 (and authority cited therein, specifically *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287 (2005); *In re J.B.*, 204 Ill. 2d 382 (2003)). The existence of conflicting authority is not the test. The test is whether this court's resolution of the issue is "desirable for the future guidance of public officers." Although I do agree that the existence of conflicting authority on a particular issue does make it more *likely* that it is desirable for this court to resolve that issue, conflicting authority is neither a necessary nor a sufficient condition for the third factor of the public interest test.

2d at 360-61 with 217 Ill. 2d at 362-63. This is not accurate, however. The appellate court's "law of the case" holding is not in conflict with any other authority. All the majority actually says on this point is that there is no prior authority applying the "law of the case" issue in this context. That means nothing more than that the appellate court's opinion is a case of first impression. This is not "conflicting" case law. Accordingly, the "law of the case" issue and the *Apprendi* issue are not differentiable on this basis.

In addition, the majority's decision to reach one issue but not the other seems to me to run counter to the spirit of the public interest exception. Other than the fifth amendment issue, none of our analysis can have any effect on the parties to this appeal. Any issue we reach and resolve other than the fifth amendment issue, we are reaching and resolving for the *sole* purpose of giving guidance to lower courts. As the majority notes, our decision answers the question whether the law of the case doctrine prevents the State from "ever filing an EJJ motion after the denial of a discretionary transfer motion is affirmed on appeal." 217 Ill. 2d at 360. But what sort of "guidance" is this? By looking only at the "law of the case" issue, we leave unresolved whether the EJJ system is itself wholly unconstitutional—an issue which the majority admits to be public in nature and likely to recur, and the importance of which can hardly be denied. If we are going to decide the first issue because we desire to provide guidance to lower courts, why deny them any guidance on the arguably more important second issue?

Because the majority and I part ways on the threshold question of whether defendant's *Apprendi* argument should be addressed, it would serve no purpose for me to engage in a solitary discourse on its merits. Accordingly, I express no opinion on the issue other than my belief that this court ought to address it.